IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| THE SWEETWATER, A WILDERNESS LODGE LLC, | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 02-1795C (Senior Judge Merow) |
| THE UNITED STATES, | ) | |
| Defendant. | ) | |

**DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION FOR RECONSIDERATION**

The Court concluded in its August 25, 2006 opinion that the United States Forest Service constructively terminated the permit issued to plaintiff for the operation of The Sweetwater Lodge when in April 2001 the Forest Service closed two bridges leading to the lodge without funding their replacement. The Sweetwater, A Wilderness Lodge LLC v. United States, No. 02-1795C (August 25, 2006) ("The Sweetwater"). In its motion for reconsideration, plaintiff asks the Court to consider the impact of permit Clause 15 on the amount of equitable consideration due upon termination. If Clause 15 is binding on the parties, as the Court suggests in its opinion and as plaintiff insists in its motion, we respectfully submit that the only permissible remedy available to the Court is to remand the termination to the Forest Service for the determination of the equitable consideration owing to plaintiff.

The remainder of plaintiff's objections to the Court's opinion are trivial disagreements with calculations of minor amounts and repackaged arguments previously raised and considered

by the Court. For reasons detailed in Section III below, none of these points presents a manifest error or otherwise merits correction.[1]

## I. Standard Of Review

It is well established that this Court has discretion to grant reconsideration. Yuba Natural Resources, Inc. v. United States, 904 F.2d 1577, 1583 (Fed. Cir. 1990); Paalan v. United States, 58 Fed. Cl. 99, 105 (2003). However, a motion for reconsideration must be based "upon manifest error of law, or mistake of fact, and is not intended to give an unhappy litigant an additional chance to sway the court." Id. at 105 (quoting Bishop v. United States, 26 Cl. Ct. 281, 286 (1992)).

## II. Clause 15 Controls The Determination Of Equitable Consideration Owing To Plaintiff Upon Termination

Plaintiff argues that Clause 15 of the permit should be interpreted to require that the determination of equitable consideration "reflect the fair market value [of the lodge] at the time of payment in order to effectuate *the parties' mutual contractual agreement that such payment be arrived at by mutual agreement and that it be equitable*." Pl. Mot. at 4 (emphasis added). While we dispute plaintiff's notion that fair market value is a fluctuating number that cannot be set until the date of payment, we agree with the far more significant argument implicit in plaintiff's motion, that Clause 15 controls any determination of equitable consideration awarded in this case. As mandated by Clause 15, the Court should remand the permit termination to the Forest Service for the parties to determine by "mutual agreement" the amount of equitable consideration due plaintiff or to follow the remaining procedures set forth in the permit.

[1] We note that the United States has never conceded that this Court has jurisdiction over a permit issued by the National Forest Service to operate a lodge. See, e.g., Def. Post-Trial Br. at 1-5. Our response to plaintiff's motion for reconsideration should not be construed as a concession that any basis for jurisdiction exists. Moreover, the citation to or defense of portions of the Court's opinion should not necessarily be construed as an agreement with the portions cited.

**A. The Court Should Apply Clause 15 In Its Entirety**

Plaintiff argues that Clause 15 is a "mutual contractual agreement" and a "clear agreement between the parties." Pl. Mot. at 4. Of course, our position is that the permit is not a contract, but instead a license whose terms are set by the Forest Service pursuant to congressionally-delegated authority to manage the National Forest System. See Mountain States Telephone and Telegraph Co. v. United States, 499 F.2d 611, 613 (Ct. Cl. 1974). Here, the permit grants plaintiff permission to use the land on which the lodge sits and to operate a public resort in accordance with the terms of the permit. The Court found that while the permit was not a contract for purposes of the Contract Disputes Act, the permit had sufficient indicia of contract upon which to base Tucker Act jurisdiction. The Sweetwater, slip op. at 31.

Whether the permit is a license (as we submit) or a contract (as plaintiff contends), plaintiff is correct that Clause 15 is the paragraph that controls the fixing of equitable consideration in this case. Plaintiff emphasizes that "the clause explicitly states that the amount of 'equitable consideration' will be subject to negotiations between the parties and must be arrived at by mutual agreement." Pl. Mot. at 4-5. However, Clause 15 is far broader in its terms. If plaintiff is correct that Clause 15 is binding on the parties, the intent of the entire clause must be effectuated, not merely the one sentence quoted out of context by plaintiff. Clause 15 reads that if the permit is terminated in the public interest:

> [T]he United States shall have the right thereupon to purchase the permittee's improvements, to remove them, or to require the permittee to remove them, at the option of the United States, and the United States shall be obligated to pay an equitable consideration for the improvements or for removal of the improvements and damages to the improvements resulting from their removal. *The amount of the consideration shall be fixed by mutual agreement between the United States and the permittee* and shall be accepted by the permittee in full satisfaction of all claims against the United States under this Clause: Provided, that

> *if mutual agreement is not reached, the Forest Service shall determine the amount and if the permittee is dissatisfied with the amount thus determined to be due him he may appeal the determination in accordance with the Appeal Regulation* (36 C.F.R. 251 Subpart C) and the amount as determined on appeal shall be final and conclusive on the parties hereto. . . .

Jt. Ex. 1/3(emphasis added); The Sweetwater, slip op. at 14.

The strict application of Clause 15 is not only a primary basis for reconsideration urged by the plaintiff, but also a major focus of the Court's opinion. Indeed, the Court held that *but for* Clause 15, the actions of the Forest Service would have amounted to a taking of The Sweetwater's improvements on the land. Id. at 25. The Court reasoned that while the facts supported a taking claim, any taking was "superseded" by the written document between the parties, namely the permit. Id. at 28. The Court held that the terms of Clause 15 applied post termination:

> Clause 15 of The Sweetwater permit provides that if, during its term, the Forest Service terminates the permit in the public interest, "the United States shall be obligated to pay an equitable consideration for the improvements . . . ." *The clause provides for the amount of the consideration to be fixed by mutual agreement and if agreement cannot be reached for the Forest Service to determine the amount, subject to an appeal by The Sweetwater if it is dissatisfied with the amount determined*. . . . [T]he actions taken by authorized officials, including the Forest Supervisor, to eliminate the Sweetwater bridges, in the public interest, thereby precluding the viable operations of a public resort on the site, had the same effect as a formal termination determination. The circumstance that the termination of the permit for a public resort was accomplished by actions to eliminate needed access, rather than a formal document, should have no bearing on a resulting obligation of the Forest Service to pay an equitable consideration for The Sweetwater's improvements. *This termination remedy was agreed to by the parties when the permit was executed in 1995 and, thus, supersedes any remedy The Sweetwater may otherwise have for denial of needed access on a taking theory*.

The Sweetwater, slip op. at 28-29 (citations omitted and emphasis added).

In other words, the Court found that the Forest Service terminated the permit in the public interest, and that equitable consideration was therefore owed under Clause 15. However, the Court then decided *sua sponte* to read the balance of Clause 15 out of the permit, and remove the parties' obligation to attempt to negotiate a mutually-agreed upon amount of equitable consideration, and, if no agreement could be reached, to invoke a specified appeals procedure. Instead, the Court took it upon itself to calculate the amount of equitable consideration. Plaintiff seeks to increase that amount in reliance upon one part of Clause 15. However, plaintiff cannot have it both ways: if Clause 15 is controlling for purposes of finding a termination and the *entitlement* to equitable consideration, it must be binding for purposes of the procedure for the determination of the *quantum* of equitable consideration. After all, as the Court emphasizes, The Sweetwater agreed to the terms of Clause 15, and "the termination remedy. . . supersedes any remedy The Sweetwater may otherwise have." The Sweetwater, slip op. at 28.

The Court's justification for reading the balance of Clause 15 out of the permit is contained in the following sentence: "The action of the Forest Service in deciding not to determine an amount for Clause 15 compensation which The Sweetwater could then accept or appeal, if not satisfied, served to eliminate any possibility for an administrative resolution of the controversy and judicial review thereof." Id. at 29. This brief reference to a "decision" by the Forest Service is the extent of the Court's basis to set equitable consideration, yet is unsupported by any evidence. In reality, the Forest Service never "decid[ed] not to determine an amount for Clause 15 compensation": the Forest Service believed there was no termination at all. Now that the Court has found a termination did in fact occur as a result of certain Forest Service actions, plaintiff's only remedy under the permit is the enforcement of the terms of the agreed-upon remedy in Clause 15.

Plaintiff now argues that "the Forest Service fail[ed] to properly invoke Clause 15 in a timely manner." Pl. Mot. at 6. Of course, the Court never made such a finding, and plaintiff's assertion of timeliness is nonsensical. The Forest Service never had to "invoke" Clause 15 unless and until it terminated the permit. While we do not agree with the conclusion of the Court that a termination in fact occurred, it seems clear that any Forest Service obligation under Clause 15 arises, if at all, only after the decision by this Court is final and not subject to appeal. Accordingly, there is no "failure" on the part of the Forest Service with respect to Clause 15, much less a "failure" that would somehow void the terms of Clause 15 requiring a "mutual agreement" and regulatory appeals process.[2]

**B. Remand to the Forest Service Is Consistent With The Term Permit Act And Wunderlich Act Review Of Claims "Arising Under" The Contract**

The Court should consider plaintiff's motion in the context of the statutory framework, namely the Property Clause of the Constitution, the congressional delegation of authority to the Secretary of Agriculture, and the Wunderlich Act. First, the "management and control over lands of the United States is in Congress under Article IV, Section 3 of the Constitution." Mountain States, 499 F.2d at 613. Congress delegated part of this authority to the Department of Agriculture by enacting the Term Permit Act. See 16 U.S.C. § 497. The Term Permit Act authorizes the Secretary of Agriculture, "under such regulations as he may make and upon such terms and conditions as he may deem proper, to permit the use and occupancy of suitable areas of land within the national forests." Id. With this delegation of authority, the Department of Agriculture has promulgated regulations to set the terms and conditions of special use permits such as the permit held by The Sweetwater. See 36 C.F.R. Part 251, Subpart B. The express

[2] Clause 15 grants the Forest Service the option (prior to determining equitable consideration) to (1) purchase the improvements; (2) remove them; or (3) require The Sweetwater to remove them. Jt. Ex. 1/3. The Court's opinion not only assumes that the Forest Service would accept option 1, but essentially *forces* the Forest Service to elect that option.

terms of The Sweetwater permit, duly issued by an authorized Forest Service representative, require that plaintiff agree to an amount of equitable consideration or subject itself to specified appeal procedures. Plaintiff has offered no basis for this Court to "usurp the powers of the Forest Service and judicially set conditions and terms for [The Sweetwater] use permit." Mountain States, 499 F.2d at 616. Yet the Court has done exactly this by unilaterally determining the amount of "equitable consideration" owed to The Sweetwater. Thus, by reading provisions of Clause 15 out of the permit to redress what the Court found to be a termination of the permit in the public interest, the Court thwarts an express exercise of congressionally-delegated authority by the Forest Service.

Assuming the correctness of the Court's holding that the permit is a contract, remanding the termination to the Forest Service is also consistent with the Wunderlich Act and the cases interpreting the Act. See 41 U.S.C. §§ 321-322. The Wunderlich Act governs review of agency actions where, as here, the action is outside of the Contract Disputes Act; the Act renders agency determinations concerning disputes arising under contracts "final and conclusive unless . . . fraudulent or capricious or arbitrary or so grossly erroneous as necessarily to imply bad faith, or . . . not supported by substantial evidence." See 41 U.S.C. § 321. The United States Court of Appeals for the Federal Circuit observed in Palmer v. General Services Administration, 184 F.3d 1373, 1379 (Fed. Cir. 1999), that under the Wunderlich Act, "[t]he disputes clause included in government contracts is intended, absent fraud or bad faith, to provide a quick and efficient administrative remedy and to avoid vexatious and expensive and, to the contractor, ruinous litigation."

In this case, while the Court found that the permit was contractual in some respects, the Court did *not* find that the Forest Service breached any of the permit's provisions; indeed, the

Court found only that the actions of the Forest Service in April 2001 effected a termination of the permit under Clause 15. The Sweetwater, slip op. at 28. Therefore, The Sweetwater's claim is one brought "under the contract" as opposed to one brought for breach of contract, and the termination clause in The Sweetwater permit is the equivalent of a disputes clause in typical Government contracts. See, e.g., Yankee Atomic Electric Company v. United States, 42 Fed. Cl. 223, 230 (1998), aff'd, Maine Yankee Atomic Power Co. v. United States, 225 F.3d 1336 (Fed. Cir. 2000). This Court has held that in "under the contract" claims, court proceedings may be initiated only after the plaintiff has exhausted his remedies under the disputes clause and the agency has developed an administrative record for review under the Wunderlich Act. Id.; Ford Motor Co. v. United States, 56 Fed. Cl. 85 (2003), rev'd on other grounds 378 F.3d 1314 (Fed. Cir. 2004). In other words, a condition precedent to any award of equitable consideration by this Court under the termination clause is that the agency has been given an opportunity to determine equitable consideration in the first instance. See Dec. 30, 2004 Order on Motion to Dismiss, at 12 (finding that *at the time of the motion to dismiss* Count II for failure to exhaust administrative remedies, the Court had not decided whether the actions of the Forest Service constituted a termination of The Sweetwater permit; therefore, defendant's motion to dismiss was premature).

In Wunderlich Act claims arising "under the contract," it is critical to remand to the agency to develop the administrative record and make the initial determination of compensation. This is because the Act, by its terms, limits Court of Federal Claims review to the agency-level administrative record with a rigorous standard of review (factual findings will be sustained unless fraudulent, arbitrary or capricious, so grossly erroneous as necessarily to imply bad faith,

or not supported by substantial evidence). 41 U.S.C. § 321.[3] The Court's decision bypasses the necessary agency determination and standard of review.

Plaintiff's response is likely that the Forest Service has already been given an opportunity to determine equitable compensation under Clause 15 and "failed to invoke that clause." See Pl. Mot. at 5; see also Pl. Post-Trial Br. at 40. This response misses the mark, however, because the Forest Service was never faced with a termination of the permit until this Court's September 19, 2006 judgment. And while courts have not required plaintiffs to exhaust administrative remedies "where it is shown by clear evidence that such procedure is inadequate or unavailable," Transpace Carriers, Inc. v. United States, 22 Cl. Ct. 80, 84 (1990), The Sweetwater has made no such showing here.

If the judgment of this Court stands that the Forest Service has terminated The Sweetwater's permit, the Forest Service (like plaintiff) is bound by Clause 15 to attempt to negotiate a mutually agreeable amount of equitable consideration and, absent an agreement, determine the amount and subject itself to the regulatory appeals procedures set out in the clause. Remand to the agency in this case, and a subsequent determination of equitable consideration, is in no way inadequate, futile, or somehow unavailable under the contract. See id.; see also Yankee Atomic, 42 Fed. Cl. at 230.[4] Accordingly, in order to comply with the clear terms of

[3] The agency's determination of equitable consideration, like an agency's determination of an equitable adjustment, is a question of fact reviewed by the courts under the more rigorous standard of review. See Electronic and Missile Facilities, Inc. v. United States, 189 Ct. Cl. 237, 416 F.2d 1345, 1354 (1969).

[4] The case was affirmed on appeal in Maine Yankee Atomic Power Co. v. United States, 225 F.3d 1336 (Fed. Cir. 2000). The reasoning and cases cited by the Federal Circuit in Maine Yankee, 225 F.3d at 1340-41, are particularly instructive:

> Where a federal contract contains such a disputes clause, and also provides a specific administrative remedy for a particular dispute, the contractor must exhaust its administrative contractual remedies prior to seeking judicial relief. See

Clause 15, the doctrine of administrative exhaustion, and the Wunderlich Act, the proper recourse is to remand to the Forest Service for the initial determination of equitable consideration.

### C. Plaintiff's Partial Application Of Clause 15 Would Lead To An Absurd Result

The discussion above makes clear the fundamental error in plaintiff's current request that the Court unilaterally impose what *plaintiff* would have agreed to as equitable consideration. The plain terms of Clause 15 do not allow any such remedy, even if plaintiff had put on evidence of what it would have agreed to as equitable consideration (and plaintiff did not). The plain language of Clause 15 contemplates a "mutual agreement" by the parties, followed by a regulatory appeals procedure in the absence of an agreement. No part of Clause 15 intends, much less requires, that the holder of the terminated permit is entitled to payment of whatever sum he believes he is owed as "equitable consideration." Such an interpretation would lead to the absurd result where (as here) plaintiff can simply demand whatever compensation it wants, claiming in hindsight that it would have agreed to the sum. There simply is no basis in the terms of Clause 15 to enforce plaintiff's unilateral demand against the United States in the absence of the permit-mandated appeals procedure. And, as discussed above, the parties cannot avail

---

McKart v. United States, 395 U.S. 185, 193 (1969) ("The doctrine of exhaustion of administrative remedies . . . provides 'that no one is entitled to judicial relief ... until the prescribed administrative remedy has been exhausted'") (quoting Myers v. Bethlehem Shipbuilding Corp., 303 U.S. 41, 50-51(1938)); Crown Coat Front Co. v. United States, 386 U.S. 503, 512 (1967) (A government "contractor must seek the relief provided for under the contract or be barred from any relief in the courts."); United States v. Joseph A. Holpuch Co., 328 U.S. 234, 239-40 (1946) (The remedies available under the disputes clause in a government contract are "exclusive in nature. Solely through its operation may claims be made and adjudicated as to matters arising under the contract. . . . And in the absence of some clear evidence that the appeal procedure is inadequate or unavailable, that procedure must be pursued and exhausted . . . .").

themselves of that procedure unless the Court remands the case to the Forest Service for a determination of equitable consideration as provided under Clause 15.

Plaintiff's current request also fails to account for the fact that "equitable consideration" is not defined anywhere in the permit. Therefore, there is no basis for plaintiff's demand that "equitable consideration" include either (1) the "fair market value as of the date of payment"; or (2) the 2001 fair market value increased by 4 percent annually until the date of payment. Pl. Mot. at 5. Not surprisingly, plaintiff has cited no authority for its novel definition of "equitable consideration." Moreover, while Clause 15 contemplates a "mutual agreement" by the parties, there is no evidence in the record as to what The Sweetwater or the Forest Service would have accepted at some unknown time in the past. At bottom, plaintiff is simply asking for an unfounded sum it has never before agreed to accept and that the Forest Service has never before agreed to pay. The Court should deny this aspect of plaintiff's motion.

## III. The Remainder Of The Issues Raised In Plaintiff's Motion Do Not Merit Reconsideration

As described below in the order presented in its motion, The Sweetwater has not met its burden to demonstrate a manifest error of law or fact with respect to any of the other issues it raises, issues that are essentially a rehashing of arguments and evidence previously considered by the Court. Paalan v. United States, 58 Fed. Cl. 99, 105 (2003).

### A. The Court Acted Within Its Discretion In Selecting A Per-Unit Value To Calculate The Value Of The Lodge

Plaintiff argues that the Court "inadvertently used an incorrect 'per unit value' for the lodge" when calculating fair market value. Pl. Mot. at 2-3. To be sure, there was a dispute at trial on this point: plaintiff's expert Que Mangus asserted that the Court should use a per unit value of $150,000 (with a range of $110,953 to $151,346), while the Government's expert John

Frome testified that a per unit value of $83,000 (with a range of $27,290 to $89,290) was more accurate. The Sweetwater, slip op. at 33. Moreover, the range of values urged by plaintiff's expert included a higher per unit price if the number of units was decreased from six to five. Id. But the Court's opinion makes clear that it considered all aspects of Mr. Mangus' approach in deciding to value the lodge using five guest units and to attribute a value of $150,000 per unit, a value at the very high end of Mr. Mangus' valuation range. The Court wrote:

> While Mr. Mangus selected the high unit value of $150,000 per unit, based on a comparable UXU Lodge sale, this is compensated for to a degree by a correction in The Sweetwater units he utilized from six to five. According to the approach used by Mr. Magnus, this would support a higher per unit price for The Sweetwater, because of the decrease in the number of units.

Id. at 33-34.

Plaintiff's motion confuses the valuation issue by asking the Court to *go beyond* Mr. Mangus' range and value The Sweetwater at $157,993 per unit. This request makes no sense given the Court's observation that: "In reaching his opinion that The Sweetwater had a value of $900,000 as of May 4, 2004. . . Mr. Mangus adjusted the three sales prices he utilized to reflect the different number of housing units in each facility with a view toward obviating the price decrease that occurs for sales having more units." Id. at 33; see also PX 44 at 28. In other words, the Court found that Mr. Mangus' opinion of the per unit value of The Sweetwater already took into account a decrease in the number of units from six to five. The Court's reasoning reflects the finding of fact proposed by plaintiff itself:

> Mr. Mangus then concluded that, because The Sweetwater was most comparable to the UXU Ranch, which had an adjusted sale price of $151,346 per unit, the appropriate unit sale price for The Sweetwater was $150,000. Tr. 2381:15-2382:12; PX 44 (page 28). Even though The Sweetwater had fewer units than UXU Ranch, Mr. Mangus did not adjust The Sweetwater's unit price higher than

> UXU Ranch's to stay within the range established by UXU Ranch. Tr. 2382:14-2383:11.

See PPFUF ¶ 225.

While we do not in any way agree with Mr. Mangus' valuation methodology or conclusions, we include the above quote to show the unreasonableness of plaintiff's motion for reconsideration of the Court's decision on valuation. Indeed, plaintiff would have the Court adopt a per unit value not only above that urged by its own expert, but even beyond that of the property deemed "most comparable" (the UXU Ranch) by its expert. See Tr. 2381:15-2383:11; PX 44 at 28.

Lastly, plaintiff's motion contradicts its own demonstrative evidence on the issue of per unit pricing admitted as PX 64. See Tr. 2847:5-2848:2. According to plaintiff's exhibit, the per unit value for a five-unit lodge is $149,730.46, not $157,996.64 as argued by plaintiff in its motion. PX 64. For all these reasons, plaintiff is simply overreaching, and fails to point out any obvious error in the Court's calculation.[5]

**B. The "Clerical Errors" Alleged By Plaintiff Do Not Exist**

Plaintiff next asks the Court to reconsider its calculation of expenditures for the years 2001, 2002, and 2004, claiming that the Court omitted certain expenses. See Pl. Mot. at 7-10. At the outset, the Court should consider plaintiff's motion in the context of having awarded plaintiff $142,545.68 in expenses during a time when The Sweetwater was never even in operation. This can only be described as an unjust windfall, given that the Court appears to have

---

[5] Plaintiff's method of reducing the value of the lodge by 4 percent each year is also flawed. The Court calculated the reduction by taking the May 2005 value ($750,000) and multiplying by 96 percent four times to get to the May 2001 value of $637,010. In contrast, plaintiff takes its new May 2005 value $789,968 and *divides by 1.04 (104 percent) four times*. The Court should not be misled into believing that multiplying by 96 percent is the same thing as dividing by 104 percent. It is not. As the Court can quickly verify, dividing by 104 percent produces a larger value (in plaintiff's favor) than multiplying by 96 percent.

reimbursed plaintiff for operation expenses allegedly incurred during a time when The Sweetwater stood dark and idle in the woods near Cody, Wyoming. Unfortunately, plaintiff's good fortune has not deterred it from seeking even more on reconsideration.

For 2001, plaintiff believes that the Court awarded plaintiff all expenses that were proven by payment via check. Pl. Mot. at 7-8. Plaintiff objects to this award, arguing that its expenses should have also included a number of additional charges such as bank fees, depreciation, amortization, and management fees. Id. Plaintiff believes that it should be reimbursed for these charges simply because they were included on its "Transaction Listing." Id. While the Court's reasoning and calculations in determining which charges were properly reimbursable are not fully reflected in its opinion, it seems logical to infer that the Court was persuaded that The Sweetwater's expenses were sufficiently proven for charges paid by check, and not sufficiently proven for charges not paid by check. After all, as proof of the latter class of charges plaintiff offered only its own "Transaction Listing." The Court also may have questioned the concept of reimbursing plaintiff for items that are not truly out-of-pocket expenses, such as depreciation, amortization, and "management fees" paid to Mr. Mummery. This again seems logical, and is not evidence of a manifest error.

To the extent the Court (as plaintiff now asserts) included these unproven charges in its award as expenses incurred in other years, plaintiff may be correct that reconsideration is appropriate. Plaintiff is not entitled to reimbursement of so-called "management fees" paid to its principal Mr. Mummery. Awarding "management fees" under these circumstances would give rise to an unjust double payment of the "management fee" Mr. Mummery already received (from himself to himself). See Tr. 404:7-15, 450:2-3. Moreover, reimbursement for *depreciation*

seems nonsensical once plaintiff has been awarded the fair market value of the improvements to the property.[6] Mr. Mummery has been awarded expenditures he truly does not deserve.

With the foregoing in mind, if the Court adheres to its finding that awarding expenses is warranted by the facts of this case, and the Court elects to reconsider the amount of its award, we respectfully submit that the Court's calculations should be amended as follows:

**Year 2001**

| | |
|---|---|
| Total expenses claimed | $45,325 |
| - legal expenses | 2,519 |
| - amortization | 2,203 |
| - depreciation | 11,974 |
| - interest expense | 8,526 |
| - management fee | 6,000 |
| - taxes/liquor license | 2,866 |
| - telephone/utilities | 4,789 |
| **Revised Total** | **$6,448** |

PX 42, 43.

With respect to the 2002 expenses, the Court awarded plaintiff $37,394. The Sweetwater, slip op. at 34. Plaintiff's attack on this portion of the Court's award is at best a shell game. Plaintiff believes that this figure reflects the total amount claimed for 2002 ($98,788) less certain litigation expenses ($53,540), followed by a double deduction of liquor expenses (2 X

[6] For example, say Mr. Mummery paid $10,000 for a new roof for one of the buildings in 2000 and claimed the roof as a repair/maintenance expense. If he depreciated the roof $1,000 per year over the next four years, he would not be entitled to the fair market value of the building with the new roof plus an additional award of $4,000.

$2,339.06), followed by a deduction for more liquor expenses ($3,175). The origin of plaintiff's $3,175 figure is not clear from a review of plaintiff's exhibits for 2002; the only liquor expense is a single entry for $2,339.06. See PX 42, 43. In any event, neither plaintiff nor we know the Court's reasoning in awarding certain expenses and denying others, or even exactly which expenses were awarded or denied. However, if the Court adheres to its finding that awarding expenses is warranted by the facts of this case, and the Court elects to reconsider the amount of its award, the Court's calculations for 2002 should be amended as follows:

**Year 2002**

| | |
|---|---|
| Total expenses claimed | $98,788 |
| - legal expenses | 56,933 |
| - amortization | 1,833 |
| - depreciation | 8,871 |
| - interest expense | 7,192 |
| - management fee | 6,000 |
| - taxes/liquor license | 7,726 |
| - telephone/utilities | 1,162 |
| **Revised Total** | **$9,071** |

PX 42, 43.

Moving to 2003, plaintiff is apparently satisfied with the Court's award of $29,977 for expenses allegedly incurred that year, again while The Sweetwater stood idle and quiet. However, if the Court adheres to its finding that awarding expenses is warranted by the facts of this case, but the Court elects to reconsider the amount of its award, the Court's calculations for 2003 should be amended as follows:

**Year 2003**

| | |
|---|---|
| Total expenses claimed | $57,154 |
| - legal expenses | 25,031 |
| - amortization | 1,833 |
| - depreciation | 6,084 |
| - interest expense | 5,633 |
| - management fee | 6,000 |
| - taxes/licenses | 8,462 |
| - telephone/utilities | 1,187 |
| **Revised Total** | **$2,924** |

PX 42, 43.

Plaintiff attempts to offer a sign of its "candidness" with the Court, pointing out that the Court may have awarded *too much* in 2004. Pl. Br. at 9-10. This is an understatement. Once again, neither party can discern the Court's methodology or calculations in deciding on a figure of $51,458 for 2004. However, if the Court adheres to its finding that awarding expenses is warranted by the facts of this case, but the Court elects to reconsider the amount of its award, the Court's calculations for 2004 should be amended as follows:

**Year 2004**

| | |
|---|---|
| Total expenses claimed | $183,267 |
| - legal expenses | 148,957 |
| - amortization | 1,833 |
| - depreciation | 5,734 |

| | |
|---|---|
| - interest expense | 5,414 |
| - management fee | 6,000 |
| - taxes/licenses | 11,298 |
| - telephone/utilities | 1,265 |
| **Revised Total** | **$2,766** |

PX 42, 43.

For these reasons, the Court should reject plaintiff's motion insofar as it requests an increased award of expenses. Further, there is certainly no basis for this Court to increase the per month rate of expenditures, expenditures that do not continue to accrue as The Sweetwater lodge continues to stand idle and unused.

### C. The Court Should Clarify One Aspect Of The Post-2004 Expenses Awarded

Upon further review of the portion of the Court's opinion related to expenses, we respectfully ask that the Court clarify one aspect of the relief ordered for plaintiff's expenses claimed after December 31, 2004. In its discussion of expenses, the Court stated that "The Sweetwater is entitled to recover, as part of its equitable consideration, its post-termination expenditures of $142,545.68 from April 3, 2001 to December 31, 2004, plus $3,167.68 each month thereafter *until the date of judgment*." The Sweetwater, slip op. at 34 (emphasis added). In contrast, the Court ordered at the close of its opinion that plaintiff is entitled to payment of "$3,167.68 per month for each month after December 31, 2004, *until payment of final judgment* herein." Id. at 35 (emphasis added). This is an important difference.

If the Court awards post-2004 monthly expenses, the Court should adopt the remedy as described in the body of its opinion, namely that plaintiff is entitled to payment for expenses *only*

*up to the date of judgment*.[7] The remedy as stated in the Court's conclusion creates the scenario where plaintiff could prolong the payment of final judgment and obtain continuing monthly payments from the Government. In addition to this motion for reconsideration, any appeal of this case will further delay payment of final judgment. Further, the Court's order conditions payment of the judgment on plaintiff's tendering to the Government "a deed or other appropriate document . . . to assure that defendant acquires valid ownership" of the lodge (id. at 35); this is yet another means for plaintiff to continue receiving the monthly "expense" payments determined by the Court, all during a time (1) when the expenses are unproven (the Court merely set an "average" monthly expense amount whether Mr. Mummery actually incurs expenses or not); (2) when the lodge and cabins are sitting dark and idle; and (3) when the Court has determined that the permit has been terminated.[8] For these reasons, the Court should make clear that any expenses awarded to plaintiff terminate at the latest on the *date of judgment*, not the date of payment of judgment.

**D. The Reference To Defendant's Exhibit 19 Has No Bearing On The Court's Decision To Deny Plaintiff Lost Profits From 1997 To 2001**

Plaintiff next contends that the Court's erroneous reference to a part of a document not admitted into evidence entitles it to an additional award of $149,824 in lost profits. Pl. Mot. at 10-15, citing The Sweetwater, slip op. at 12. There is no manifest error here beyond the

[7] This should not be construed as an agreement with the Court's award of expenses for the period after December 31, 2004. As we have demonstrated, Clause 15 of the permit grants any determination to the "mutual agreement" of the parties, or, if the partied cannot agree, to the Forest Service with a specified appeals procedure. Moreover, plaintiff is certainly not entitled to "expenses" during a period of time when the lodge stood (and continues to stand) empty and unused.

[8] In fact, the only expense that plaintiff is arguably required to incur after judgment is the annual Forest Service permit fee of $1,400.

erroneous reference to the document, and the Court should reject plaintiff's contrived connection between the document and its claim for lost profits.

As a matter in reconsideration the Court can merely strike the reference to the document from its opinion altogether. Alternatively, the Court can maintain the reference and admit the document into evidence for what the parties agree that it is, namely a statement prepared contemporaneously by a permit holder or Forest Service employee recording events that took place around the time Mr. Mummery submitted his permit application in 1995. Pl. Mot. at 11. If the Court admits the document into evidence, plaintiff cannot claim prejudice by reference to the document, because the Court did not attribute authorship to Mr. Mummery.

In any event, the citation to the 1995 document had no impact on the Court's decision denying The Sweetwater lost profits from 1997 to 2001. With respect to profits, the Court concluded that "The Sweetwater's determination not to operate after 1996 may well have been a rational business decision, but not one for which the Forest Service has financial responsibility." The Sweetwater, slip op. at 35. Plaintiff has not explained how the Court's findings on lost profits related to, much less hinged upon, the single reference to the application attachment.

Plaintiff instead claims to see some connection between the Court's citation to Defendant's Exhibit 19 and two factual findings: 1) that "when asked, the Forest Service provided full information to prospective purchasers of site improvements" and 2) that "Mr. Mummery [] did not seek access to the Forest Service bridge records." Pl. Mot. at 11-12. Yet the connection between Defendant's Exhibit 19 and the Court's two findings is not at all clear or explained. Moreover, the Court had ample record evidence from which to draw these factual findings and plaintiff's motion does not carry its burden to show that "evidence not previously available has become available." Bishop, 26 Cl. Ct. at 286.

Nor can plaintiff meet its burden to prove a "manifest error of law." Yuba Natural Resources, Inc, 904 F.2d at 1583. The Court supported its denial of future profits citing John Reiner & Co. v. United States, 325 F.2d 438, 444 (1963), for the proposition that a termination for convenience is "equivalent" to the breach claim it supersedes, with the exception that "unearned anticipated profit" is not allowed. The Sweetwater, slip op. at 31. The Court also concluded that, after termination, plaintiff could not be entitled to lost profits. Id. at 35. While the Court did not go into detail, John Reiner (and three other cases cited by the Court, id.) stand for the bedrock principle of Government contracting that a termination under a contract clause substitutes for any remedy for a contract breach or a taking, and precludes any lost profits. See Best Foam Fabricators Inc. v. United States, 38 Fed. Cl. 627, 637-638 (1997) (breach); G. C. Casebolt Co. v. United States, 421 F.2d 710, 713 (1970) (breach); Gen. Builders Supply Co., Inc. v. United States, 409 F.2d 246, 251 (1969) (taking); see also Ness Investment Corp. v. United States, 595 F.2d 585, 590 (Ct. Cl. 1979) (holding that any breach of contract or taking claim could not "prevail" given that the seizure of improvements at a resort under a Forest Service permit was done according to the permit clause). The Court of Claims also held in John Reiner that lost profits were not available absent "clear and direct proof," and such proof is "unavailable" when the agency has the ability to terminate the contract. John Reiner, 325 F.2d at 444-445. Obviously, if lost profits are not capable of being proven because the agency might terminate, lost profits cannot be proven after the agency has actually terminated the permit as found here by the Court.

## CONCLUSION

For the reasons stated above, defendant respectfully requests that the Court deny the relief requested in plaintiff's motion for reconsideration, and instead remand the matter to the Forest Service for a determination of the equitable consideration due plaintiff upon termination.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

s/ Kathryn A. Bleecker
KATHRYN A. BLEECKER
Assistant Director

OF COUNSEL:

KENNETH S. CAPPS
Office of General Counsel
U.S. Department of Agriculture
740 Simms Street, Room 309
Golden, CO 80401-4720

s/ Gregg M. Schwind
GREGG M. SCHWIND
Trial Attorney
Commercial Litigation Branch
Civil Division
U.S. Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington D.C. 20530
Tel: (202) 353-2345
Fax: (202) 514-8624

October 5, 2006

Attorneys for Defendant