**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **THE SWEETWATER, A WILDERNESS LODGE LLC,** | ) | |
| **Plaintiff,** | ) | **No. 02-1795C** |
| **v.** | ) | **(Senior Judge Merow)** |
| **THE UNITED STATES,** | ) | |
| **Defendant.** | ) | |

**DEFENDANT'S OPPOSITION TO PLAINTIFF'S REVISED APPLICATION FOR ATTORNEY'S FEES AND COSTS PURSUANT TO THE EQUAL ACCESS TO JUSTICE ACT**

Defendant, the United States, respectfully opposes The Sweetwater's application for fees and expenses pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412 ("EAJA"). The Sweetwater is not entitled to EAJA fees or expenses because the Court rejected the majority of the theories of liability urged by plaintiff, and the Government's position was in all respects substantially justified. Moreover, the award requested by plaintiff is plainly excessive in view of the limited success actually achieved. Finally, certain categories of plaintiff's costs are not recoverable under any reading of the EAJA statute.

## I. Relevant Background

Plaintiff, the owner of a lodge located on Federal land near Cody, Wyoming, filed suit in this Court on December 6, 2002, claiming breach damages as a result of the Forest Service closure of two National Forest bridges leading to the lodge. After a trial on the merits, plaintiff raised six arguments in its post-trial brief:

1. The Contract Disputes Act ("CDA") applied to the Term Permit issued to The Sweetwater (Pl. Post-Tr. Br. at 11-14);

2. The Forest Service "tortiously" breached the permit by falsely asserting at the time of permit inception that the bridges were safe for vehicular travel (id. at 14-21);

3. The Forest Service breached the permit by affirmatively preventing the funding of the replacement of the bridges (id. at 21-39);

4. The Forest Service breached the permit by failing to pay The Sweetwater compensation following a termination in the public interest (id. at 40-43);

5. The actions of the Forest Service constituted a taking (id. at 50-51); and

6. The United States was liable to The Sweetwater for $2,721,886 in damages, consisting of operating expenses from 1997 to 2005 ($520,000), lost profits ($661,250), the value of the lodge ($1,227,500), and the value of the permit ($329,700). Id. at 44-50; see also Pl. Resp. to Def. Post-Tr. Br. at 30.

We responded that The Sweetwater's permit was not a contract covered by the CDA; that Forest Service officials, by disclosing that the bridges were unreliable, did not make any misrepresentations; that the Forest Service did not breach any duties in deciding not to commit funds for bridge replacement; that the Forest Service never terminated the lodge's operations; and that plaintiff's damage calculations were flawed and exaggerated. See Def. Post-Tr. Br.

The Court rejected most of plaintiff's arguments, finding only that the Forest Service actions in closing for safety reasons the two bridges leading to the lodge resulted in a constructive termination of the permit, and that The Sweetwater was entitled to a portion of its expenses and the value of the lodge as "equitable consideration" under the permit. The Sweetwater, A Wilderness Lodge LLC v. United States, 72 Fed. Cl. 208 (2006) (The Sweetwater). The actual amount awarded

by the Court (approximately $800,000) was less than one third of the $2.7 million plaintiff claimed as damages. Id.

## II. The Government's Position Had A Reasonable Basis in Law And Fact

### A. Applicable Standard

EAJA "allows a prevailing party to recover attorney's fees, unless the position of the Government was substantially justified." 28 U.S.C. § 2412(d). We agree that plaintiff is a "prevailing party" under the statute. Owen v. United States, 861 F.2d 1273, 1274 (Fed. Cir. 1988). However, The Sweetwater's status as a "prevailing party" does not render the Government's arguments not substantially justified. Scarborough v. Principi, 541 U.S. 401, 415 (2004) (holding that "Congress did not want the 'substantially justified' standard to 'be read to raise a presumption that the Government position was not substantially justified simply because it lost the case"); see also Pierce v. Underwood, 487 U.S. 552, 569 (1988) (noting that "the fact that one court agreed or disagreed with the Government does not establish whether or not its position was substantially justified."). At the same time, we accept our burden to prove that our position was substantially justified, that is, demonstrating that our position was "justified to a degree which would satisfy a reasonable person" and had a "reasonable basis in both law and fact." White v. Nicholson, 412 F.3d 1314, 1315 (Fed. Cir. 2005); Pierce, 487 U.S. at 565.

Considering plaintiff's claim as a whole, The Sweetwater is not entitled to any EAJA fees or expenses because the Government's position had a reasonable basis in law and fact and, therefore, was substantially justified.

### B. The Court's Resolution Of The Majority Of The Issues Presented Was In Favor Of The Government

In this case, the Court disagreed with The Sweetwater that the Term Permit was a CDA contract. The Court expressly found that the permit was not for "the procurement of services"

within the meaning of the CDA as urged by plaintiff. See Pl. Post-Tr. Br. at 11; 41 U.S.C. § 602. More importantly, while the Court found that the permit was contractual in nature, the Court concluded that the Forest Service in no way breached the permit:

> Accordingly, if it is concluded that The Sweetwater's permit comprises a contract on which a cause of action can be grounded, The Sweetwater has not established that the permit was breached prior to the Forest Service actions resulting in permit termination.

The Sweetwater, 72 Fed. Cl. at 226.

This conclusion disposed of plaintiff's most vigorous arguments, arguments that The Sweetwater raises again in its EAJA application. For example, The Sweetwater was adamant that the Forest Service intentionally concealed "critical information" as to the condition of the bridges and made "false representations" of the bridges' safety at the time Mr. Mummery was considering purchasing the lodge in 1995. Pl. Post-Tr. Br. at 14-19. Plaintiff characterized the alleged Forest Service conduct as a "tortious breach of contract." Id. at 19; Pl. Resp. to Def. Post-Tr. Br. at 17. The Court disagreed, finding only a termination under Clause 15 resulted from the Forest Service's closure of the two bridges over Sweetwater Creek.

Similarly, the Court did not find that the Forest Service breached any duty to cooperate with The Sweetwater when it decided not to commit funds to replace the bridges. See Pl. Post-Tr. Br. at 21-39. This disposed of another of plaintiff's most strident and continuing arguments. In fact, The Sweetwater told the Court in its post-trial brief that the Forest Service acted in bad faith, and "actually committed to preventing any further operations at the lodge, and took affirmative actions to block such operations" by not funding the bridge replacement. Id. at 21, 30. According to plaintiff, the Forest Service "induced" Mr. Mummery into entering into the Term Permit, then "wrongfully" ceased all further efforts to locate funding for the bridges. Id. at 30, 34. The Court correctly ignored plaintiff's version of the facts in finding no breach.

Finally, the Court rejected plaintiff's bloated calculation of damages. The Sweetwater, 72 Fed. Cl. at 227-29. The Court disagreed with The Sweetwater that it was entitled to any lost profits, finding that the Forest Service bore no responsibility for The Sweetwater's decision not to operate from 1996 to 2001. Id. The Court further found that the Forest Service was not liable for lost profits following the 2001 closure of the bridges. Id. The Court also declined to award the majority of the out-of-pocket expenses sought by plaintiff. Id. Of the $520,000 in operating expenses The Sweetwater asserted it had "documented and established with certainty," Pl. Post-Tr. Br. at 46, the Court rejected the recovery of any expenses incurred prior to April 2001, and permitted a total recovery of only $111,704.70 thereafter. The Sweetwater, 72 Fed. Cl. at 228. The remaining expenditures awarded by the Court ($2,482.32 per month from December 31, 2004 to present) were based upon an extrapolation from past costs, and not upon any costs actually incurred. Id. Against this backdrop of reality, plaintiff's assertion in its EAJA application that "The Sweetwater achieved full success in its claim" is pure hyperbole. Pl. Revised App. at 8.

Accordingly, when considering the totality of The Sweetwater's claim, the Court should bear in mind that plaintiff was largely unsuccessful in its pursuit of damages before this Court. While this fact is not dispositive of liability under EAJA, it certainly suggests that the Government's positions in opposing Mr. Mummery's claims were reasonable.

### C. The Government's Positions In Opposition To Plaintiff's Ultimately Successful Arguments Were Substantially Justified

The Court partially credited plaintiff's fall-back argument, finding that the Forest Service terminated The Sweetwater's permit by closing the bridges and not funding their replacement in April 2001. The Court also found that plaintiff's valuation of the lodge was in large part more accurate than that offered by defendant. While plaintiff prevailed on these two questions, the Government's opposition to both was wholly reasonable.

### 1. The Court's Finding That A Termination Occurred In April 2001

First, the Court's findings must be assessed in the context of plaintiff's far broader and more sinister assertions that the termination of its permit occurred between 1997 and 1999, when (according to plaintiff), Forest Service officials and environmentalists conspired to contrive "a method in which lodge operations would be terminated." See Pl. Post-Tr. Br. at 40-43; PPFF ¶¶ 127-152. Indeed, plaintiff argued that the Forest Service executed a strategy to terminate the permit by blocking funding to repair the bridges in order "to save Forest Service money" and convert the land to a conservation use and "improve the habitat for sensitive or endangered species." See Pl. Post-Tr. Br. at 41-42. Plaintiff argued that these actions "completed the goal of terminating lodge operations," and that the termination, without an offer of Clause 15 compensation, breached the permit as far back as 1997. Id. at 42-43. The Sweetwater makes many of these same assertions in its EAJA application. See Pl. Revised App. at 2-7.

For its part, the Court agreed with none of plaintiff's conspiracy theory or timing of termination. In fact, the Court disagreed with or ignored most of plaintiff's argument on this point, finding (1) that no breach occurred at all and (2) that a constructive termination took place only in April 2001 when the Forest Service actually closed the bridges for safety reasons with no plan in place to fund their replacement. The Sweetwater, 72 Fed. Cl. at 225. Accordingly, the Court agreed in large part with the Government's counter-arguments on the point of whether and when any termination occurred. Thus, any assertion that plaintiff "prevailed" in its argument is misleading. Moreover, plaintiff was never willing to settle for the limited remedy ordered by the Court: "equitable consideration" under Clause 15.[1]

[1] As a technical matter, plaintiff's exact Clause 15 termination argument was different from what the Court found and awarded. Plaintiff actually argued that the Government breached the permit (a CDA contract, according to plaintiff) by terminating the permit in 1997 and not paying Mr. Mummery "equitable consideration" under Clause 15 at that time. See, e.g., Pl. Post-Tr. Br. at

That said, we concede that the Court did not adopt the Government's argument that no termination occurred at all under Clause 15 of the permit. However, our argument had a reasonable basis in fact and law, a basis underscored by the following evidence:

- the absence of any language in the permit promising to replace the bridges or to purchase the lodge if the bridges were not replaced (see Def. Post-Tr. Br. at 7-12, 27-28);

- Mr. Mummery's agreement that access to the lodge was possible via fords and that fords would need to be used if the bridges failed (id. at 16-17, citing JE 6, a contemporaneous account of the June 1995 meeting with Mr. Mummery recording that "Jeff [Mummery] doesn't have a problem with going to fords as a contingency for bridge failure or unsafe bridge condition");

- Mr. Mummery's understanding, at the time of permit inception, that future funding of the bridges was uncertain (id. at 13, citing JE 6 which also recorded that "It is understood that we do not have a priority on maintaining this road, and are not likely to allocate dollars to it");

- the fact that the Forest Service never affirmatively revoked the permit or otherwise barred Mr. Mummery's operation of the lodge (id. at 25-26);

- the absence of any finding by the Forest Service that termination of the permit was in the public interest, as required by Clause 15 (id. at 31)

- testimony that the Forest Service's attempts to find a "conservation buyer" for the lodge was not the result of a conspiracy to terminate the permit, but only of Mr. Mummery's choice not to operate the lodge (id. at 30);

- the fact that plaintiff failed to operate the lodge as a public resort from 1997 forward (id. at 31-33).

Given the evidence supporting the Government's argument that no termination and resulting breach occurred, as well as the Court's narrow finding that a termination in the public interest took place only in April 2001, our argument on this issue was reasonable.

---

40-43. Plaintiff then argued that this *breach* entitled it not merely to "equitable consideration," but to *breach damages* including operating expenses from 1997 to present, lost profits from 1997 to present, and the value of The Sweetwater, asserted as a hybrid of reproduction cost and fair market value. Id. at 44-50.

Plaintiff also criticizes the Government's position that The Sweetwater permit was a license not a contract. Pl. Revised App. at 5. Yet this Court noted in Son Broadcasting, Inc. v. United States, 52 Fed. Cl. 815, 822 (2002), that "courts have reached divergent conclusions about whether a particular permit constitutes a binding contract," and that the conclusion depends upon an examination of the "language and characteristics" of the permit in question. Indeed, in Hage v. United States, 35 Fed. Cl. 147, 165-66 (1996), the Court held that plaintiff's grazing permit from the Forest Service was a license whose "language and characteristics" did not create a contract with the Government. Further, the question of whether a term permit is a contract has never been directly addressed by the Federal Circuit.[2] We add that, to our knowledge, there is no case law on "constructive termination" pursuant to a clause such as Clause 15 in The Sweetwater's permit, a clause that at least appears to require an affirmative termination decision by the Forest Service upon a finding that that the termination is in the public interest.[3] Thus, the Court's decision is one of first impression. For these reasons, the Court's conclusion that The Sweetwater permit was "sufficiently

[2] Plaintiff's passing accusation that the United States took an "unreasonable and duplicitous position" in this litigation in view of the Government's position in another case is unfounded. See Pl. Revised App. at 5 n. 5. In Peckham v. United States, 61 Fed. Cl. 102 (2004), the Forest Service had revoked plaintiffs' special use permit prior to the expiration of its term because the Peckhams violated several of its provisions. The Peckhams then refused to vacate the premises and made a number of additional improvements to the property. The United States successfully obtained a judgment for ejectment and the costs of removal, remedies expressly included among the terms of the Peckhams' permit. However, and in response to The Sweetwater's accusation, the ability of the United States to enforce the terms of a permit (a license) against a permit holder (the licensee) is not in any way a concession that the permit is a contract.

[3] See the Court's Order dated October 6, 2006 at 2 ("There was no administrative termination decision in this matter which would call for remand action to determine damages involved."). We respectfully submit that the facts in the two decisions cited by the Court in finding a constructive termination are distinguishable from the facts giving rise to the termination invoked by the Court in this case. See The Sweetwater, 72 Fed. Cl. at 225, citing Wetsel-Oviatt Lumber Co., Inc. v. United States, 38 Fed. Cl. 563, 569 (1997) and Best Foam Fabricators, Inc. v. United States, 38 Fed. Cl. 627, 638 (1997); see also Def. Post-Tr. Br. at 29.

contractual in nature" to support Tucker Act jurisdiction, see 12/30/04 Order on Mot. to Dismiss, does not give rise to liability under EAJA.

**2. The Valuation Of The Lodge**

The other issue on which The Sweetwater had partial success was the valuation of the lodge. The Court found that the "approach utilized by [plaintiff's appraiser] Mr. Mangus offers a clearer view of The Sweetwater's value." The Sweetwater, 72 Fed. Cl. at 228. The Court accepted plaintiff's expert valuation of $150,000 per building, reduced by 4% per year to the awarded sum of $637,010. Once again, however, this finding must be assessed in the context of plaintiff's far more expansive valuation theory, the bulk of which was rejected by the Court.

For example, plaintiff argued in its post-trial brief that the Court should award it $1,227,500 for the value of the lodge. The Sweetwater first calculated the average of what it believed it would cost to reproduce the lodge facility at another location ($1,475,000) and the fair market value ("FMV") of the lodge in May 2005 ($900,000). Pl. Post-Tr. Br. at 48-49. Plaintiff then increased this average figure by a 4% annually for the period May 2005 to March 2006 to arrive at a final valuation of $1,227,500. Id. Thus, the ultimate award of $637,010 for the value of The Sweetwater bore little relation to plaintiff's original claim.

More tellingly, the Court entirely disregarded plaintiff's reproduction cost evidence, finding instead that the value of the lodge "improvements" awarded to plaintiff should be determined only with respect to FMV at the time of the April 2001 termination. The Sweetwater, 72 Fed. Cl. at 227. Thus, the only material issue in dispute was the FMV of the lodge. On this point, the Court concluded that "*each party* presented a highly qualified expert witness who had thoroughly investigated the market for the twelve North Fork lodges during the relevant period of time." Id. (emphasis added). Plaintiff's appraiser, Que Mangus, contended that The Sweetwater should be

considered a six-unit lodge worth $150,000 per unit, or $900,000. Id. The Government's expert considered The Sweetwater only a five-unit lodge, with a total value of $415,000. Id.

The Court adopted Mr. Mangus' valuation of the lodge at $150,000 per unit, but agreed with our expert's use of only five units for the lodge, for a total FMV of $750,000. Id. at 228. The Court then – in contrast to plaintiff's request that the Court *increase* the FMV by 4% annually for the period May 2005 to present – *decreased* the fair market value by 4% annually to April 2001, the date of the constructive termination. Id.

There was nothing unreasonable in the Government's expert testimony or argument on the point of valuating The Sweetwater. The Court found that the Government's expert was qualified and did a thorough job in assessing similar lodge sales in the area. Id. at 227. The Court disagreed with or ignored much of plaintiff's valuation methodology, including its reliance upon reproduction cost and the number of units in the lodge. Id. at 227-28. Indeed the only weakness noted by the Court in the Government's evidence was our expert's use of the 1995 sale of The Sweetwater from the Brannons to Mr. Mummery for $287,000. Id. at 228. This was hardly unreasonable, given that the 1995 sale was an arms-length transaction between a willing buyer and a willing seller, albeit a seller eager to obtain a "quick sale." Id. at 213. We also presented evidence that many of the sales considered by both experts involved lodges whose per-unit values were far less than the $150,000 figure urged by Mr. Mangus. See Def. Post-Tr. Br. at 60-61. Finally, plaintiff does not address anywhere in its EAJA application the valuation aspect of the Court's decision, suggesting that it agrees the Government's position was justified. For these reasons, the Government's position on valuation should not be considered unreasonable or serve as a basis for EAJA liability.

**D. Certain Of Plaintiff's Cost Items In Its EAJA Application Are Not Recoverable Under Any Circumstances**

Turning to plaintiff's itemization of its attorney fees and other costs allegedly incurred in litigating its claim, a number a charges should be disallowed if the Court finds the United States' position not substantially justified. Each is addressed below. In addition, we ask the Court to consider plaintiff's limited result in this case as a "special circumstance" rendering unjust the massive $350,000 EAJA award now requested by The Sweetwater. See 28 U.S.C. § 2414(d)(1)(A). As the Supreme Court held in Hensley v. United States, 461 U.S. 424, 435-36 (1983), a plaintiff should fully recover its attorney fees only where the attorney has "obtained excellent results." In answering this question, "the most critical factor is the degree of success obtained." Id. As discussed in detail previously, The Sweetwater obtained only a very limited degree of success where the Court rejected the majority of its legal theories and damage calculations.

**1. Plaintiff Is Not Entitled To Fees And Costs Incurred Prior To Litigation**

In its EAJA application, The Sweetwater has claimed over $47,000 in fees and costs incurred in from February through December 2002. See Pl. Revised App. at Exs. B, D. However, plaintiff did not file its complaint in this case until December 6, 2002. In Cox Construction Company v. United States, 17 Cl. Ct. 29, 33 (1989), the predecessor to the United States Court of Appeals for the Federal Circuit held that "EAJA authorizes a prevailing party's recovery of only such fees and expenses as were incurred in 'civil actions' and agency 'adversary adjudications.'" The court also held that EAJA does not allow "recovery of those fees and expenses attendant to plaintiff's "prosecution of its certified claim before the contracting officer." Id. Simply put, there is no entitlement under EAJA to fees "incurred during administrative consideration of a claim before litigation." Id. Numerous courts have agreed that EAJA does not permit recovery of attorney fees

or other expenses incurred prior to litigation in court, when there is no "adversary adjudication" within the meaning of 28 U.S.C. § 2412(d)(3). See, e.g., Ardestani v. Immigration & Naturalization Serv., 502 U.S. 129, 518-21 (1991) (holding that pre-litigation deportation proceedings do not qualify as "adversary adjudications," and therefore plaintiff could not recover for fees incurred during those proceedings); Levernier Constr., Inc. v. United States, 947 F.2d 497, 500-02 (Fed. Cir. 1991) (examining EAJA statute and precedent, and concluding that fees incurred while challenging agency action before contracting officer were not recoverable because they were not incurred during an adversary adjudication); Hillensbeck v. United States, No 04-1455, 2006 WL 3488850, at *4-5 (Fed. Cl. Nov. 30, 2006) (finding no EAJA entitlement to fees incurred in administrative proceedings and lobbying Congress on plaintiff's behalf); Rowell v. Sullivan, 813 F. Supp. 78, 80-81 (D.D.C. 1993) (holding that administrative proceedings were not adversary adjudications and fees incurred during those proceedings were not recoverable under EAJA).

A cursory examination of plaintiff's EAJA submission reveals that The Sweetwater seeks reimbursement for the costs of representation from January to December 2002, before the initiation of litigation in this case. The brief descriptions of the legal work performed relate to counsel's attempts to exact payment from the agency, Freedom of Information Act Requests, drafting of The Sweetwater's operating plan, drafting the claim to the Forest Service, initiating an Inspector General investigation, and lobbying various members of Congress to put pressure on the Forest Service. Under applicable precedent, there is no recovery under EAJA for this portion of plaintiff's claim.

### 2. Plaintiff's Cannot Recover Its Legal Fees Incurred In Filing Its Unsuccessful Motion For Reconsideration

Plaintiff seeks fees incurred in connection with its motion for reconsideration of the Court's original decision dated August 25, 2006. There, plaintiff argued that the Court used the wrong per-unit value for the lodge when calculating FMV, incorrectly applied Clause 15 of the permit,

wrongly denied entitlement to lost profits, and erroneously calculated its expenditures for the years 2001, 2002, and 2004. See Pl. Mot. for Recons. Plaintiff contended that, as a result of these errors, it was entitled to approximately $200,000 in additional damages. Id.

The Court denied plaintiff's motion with the exception of deleting a reference to an exhibit used but not admitted at trial. See 10/6/06 Order at 2. However, the Court stated that "[t]his deletion has no impact on any aspect of the Opinion." Id. At the same time, however, the Court did reassess the calculation of expenditures in light of the Government's response to the motion for reconsideration, and *reduced* plaintiff's award by approximately $45,000. Id. Under these circumstances, plaintiff cannot be considered a "prevailing party" in its motion for reconsideration and is not entitled under EAJA to reimbursement of its legal fees to prepare and file the motion.[4]

### 3. Plaintiff Cannot Recover Late Charges For Unpaid Legal and Expert Fees, Or Its Principal's Personal Costs

Certain costs claimed by plaintiff lack any EAJA basis. For example, it appears from the billing submitted in support of plaintiff's EAJA application that Mr. Mummery has not been paying his legal fees since some time in 2004. See Pl. Revised App. at Exs. D, W. In 2005, his attorney's former firm apparently began charging interest on the unpaid legal fees. Id. According to the EAJA application, the late fees and interest on Mr. Mummery's unpaid balances total $14,032.29. See Pl. Revised App. at Ex. D. Plaintiff has offered no legal basis for recovering late fees and interest under EAJA, and the Court should deny this portion of plaintiff's application.[5]

[4] We note that plaintiff also seeks reimbursement for 11 hours of work in preparing a reply in support of its motion for reconsideration. See Pl. Revised App., Ex. K at 3. No such reply was ever filed. We assume that these charges were included in The Sweetwater's EAJA application as an oversight.

[5] In addition, the evidence of late fees/interest continuing to be charged as late as December 2006 casts doubt on Mr. Mummery's assertion in his declaration that he has incurred all of the attorney fees and expenses he now claims. See Pl. Revised App., Ex. A.

Similarly, plaintiff seeks reimbursement of Mr. Mummery's personal charges for meals, transportation, and lodging to attend various aspects of the litigation, including depositions and hearings. See id. at Ex. S. Mr. Mummery is not plaintiff's attorney and offers no basis for reimbursement of these types of expenditures. See 28 U.S.C. 2412(d)(2)(A).

Finally, plaintiff claims a number of undefined miscellaneous costs (K Mart, Walmart, Shoshone Office Supply, etc.) for which it offers no evidence of a connection to this litigation. See Pl. Revised App. at Ex. V. Lacking any explanation that these miscellaneous expenses are permitted under the EAJA statute, the Court should disallow them.

**4. Plaintiff's Claim For The Site-Tek Expert Cost Is Not Recoverable**

The Sweetwater has included $13,129.05 in fees from an Arizona company called Site-Tek, a firm employed by The Sweetwater to estimate the cost to reproduce and reconstruct the lodge at another location. See Pl. Revised App. at Ex. M. Plaintiff hoped during and after trial that the Court would rely upon its estimate to reproduce The Sweetwater when calculating the value of the lodge. See PX 45; Pl. Post-Tr. Br. at 48-50. The Court did not do so; instead, the Court relied solely upon the FMV opinions of appraisers Que Mangus and John Frome. The Sweetwater, 72 Fed. Cl. at 227-28.

The EAJA statute states that "fees and other expenses" awarded under the statute are limited to "the reasonable cost of any study, analysis, engineering report, test, or project which is found by the court to be necessary for the preparation of the party's case." 28 U.S.C. § 2412(d)(2)(A). Given the Court's decision and its reliance upon the FMV studies offered by the parties, plaintiff cannot reasonably assert that the Site-Tek reconstruction report was necessary to its case. Indeed, the Government offered no such reconstruction expert at all, contending instead that reproduction costs were irrelevant and that there was no legal basis for the Court to award as breach damages the cost

to reproduce the lodge. See Def. Post-Tr. Br. at 62-66. The Court implicitly agreed by making no reference to reproduction costs. Under these circumstances, any amount expended by plaintiff to retain Site-Tek is not recoverable.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

s/ Kathryn A. Bleecker
KATHRYN A. BLEECKER
Assistant Director

s/ Gregg M. Schwind
GREGG M. SCHWIND
Trial Attorney
Commercial Litigation Branch
Civil Division
U.S. Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington D.C. 20530
Tel: (202) 353-2345
Fax: (202) 514-8624

Attorneys for Defendant

OF COUNSEL:

KENNETH S. CAPPS
Office of General Counsel
U.S. Department of Agriculture
740 Simms Street, Room 309
Golden, CO 80401-4720

December 28, 2006