IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| THE SWEETWATER, A WILDERNESS LODGE LLC,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | ) | No. 02-1795C<br>(Senior Judge Merow) |

**PLAINTIFF'S THIRD MOTION FOR A STATUS CONFERENCE**

The Sweetwater, A Wilderness Lodge LLC ("The Sweetwater"), respectfully seeks a third status conference with the Court. The Sweetwater appreciates the Court having held two prior status conferences and the benefit those conferences provided in resolving some of the issues between the parties related to carrying out the Court's judgment. However, the key dispute between the parties remains. The purpose of the current status conference request is to determine whether the Court can issue a clarification of its judgment in this case without further briefing or, if briefing is required, to determine that schedule. The Sweetwater is asking the Court to clarify that its judgment requires The Sweetwater to transfer nothing more than unencumbered title to the lodge facilities.

This request is necessary because the government now is of the view that The Sweetwater is obligated, as part of its transfer of title to the lodge facilities, to incur the maintenance and repair costs necessary to provide the lodge facilities to the government in the condition they were as of the appraisal in 2005 (or maybe even 2001, based on some of the government's more recent statements). *See* Exh. 1 and 2 attached hereto (letters from Gregg Schwind to Kevin Garden

stating that the government "is entitled to transfer of the lodge in [its] maintained condition" and demanding that The Sweetwater either incur additional costs in cleaning the lodge facilities or reduce the amount of the Court's judgment). This demand has absolutely no legitimate basis and directly contradicts the Court's judgment. The Court explicitly held that The Sweetwater had no maintenance obligations related to the lodge facilities as of 2001 and, to the extent The Sweetwater undertook any such maintenance efforts since 2001, the government must compensate The Sweetwater for those efforts. Opinion at 33-34. The government's position is rendered even more improper given that the government has precluded any reasonable safe access to the lodge necessary for such maintenance efforts due to its locking and failing to repair the condemned bridges at issue. The government, aware that any delay in this matter is to the government's benefit, is now obstinately insisting that The Sweetwater had such maintenance obligations and did not meet them, and therefore the government is entitled to reduce The Sweetwater's award in this case because of the absence of such maintenance. The government is withholding payment to The Sweetwater until and unless this wholly improper demand is met.

Furthermore and despite The Sweetwater's adamant objections to its conduct, the government now has boldly asserted that the Court has validated the government's position and authorized the government to further delay this matter in order to seek an independent assessment of the cost associated with providing certain maintenance and repairs to the lodge facilities. *See* Exh. 1 (letter from Gregg Schwind stating that the government believes the Court has confirmed the validity of the government's position on this issue and stating that the government, pursuant to the Court's recommendation, is seeking an independent assessment of the costs of maintenance and repair efforts related to rodent damage). The Sweetwater believes that the government is wholly mistaken that the Court has authorized this additional delay, much

less approved of government's position as to the condition of the lodge. The government has misconstrued the Court's polite cautionary comments to the government as favorable comments, and is now insisting that the Court is encouraging further delay in this matter.

Simply stated, the government was obligated under this Court's judgment to pay for the value of the lodge based on the lodge's condition as of 2001. In addition, as this Court has already held, The Sweetwater had no obligation to maintain the lodge after that date and any out of pocket costs it incurred to maintain the lodge are to be paid back by the government. Opinion at 33. In addition to this fact, the government placed locked gates on the condemned bridges which provided the only vehicular access to the lodge because those condemned bridges were deemed not safe for use. Due to the government's actions and failure to maintain the bridges to allow safe passage, there was no reasonable and safe access to the lodge.[1] However, the government is now claiming that The Sweetwater should have been maintaining the lodge since 2001 and is responsible for any damages which may have occurred since that date.[2] Even if this

---

[1]The Sweetwater could not have brought in a commercial service to maintain the lodge because of the lack of safe access over the condemned bridges. In addition, The Sweetwater does not own four wheeled ATVs, which is the only means by which the government has been accessing the lodge. Finally, the government cannot properly demand that Mr. Mummery, who is 63 years old, was obligated to regularly access the lodge by crossing the condemned bridges at his own peril (which is a two-man job) and perform maintenance and repair until the government finally decided to make payment for the lodge facility. Instead of being grateful for the amount of maintenance which Mr. Mummery voluntarily did have completed at his own peril up until 2003, the government instead is demanding that he should have risked his health and safety on a regular basis from 2001-2007. Mr. Mummery repeatedly testified in the hearing that he had been precluded from accessing the lodge in a reasonable and regular manner since 2001. This testimony rebuts the absurd post-trial inference now being forwarded by the government that the management fee paid to Mr. Mummery somehow included Mr. Mummery performing rodent control efforts himself.

[2]The government's current demand is truly outrageous given that in 2001 the government concluded that the government bridges were unsafe for use, refused to spend the money to make them safe for use and then placed physical barricades on those condemned bridges because of the danger they posed to anyone trying to cross them and *prohibited* Mr. Mummery from crossing them in a vehicle. (Several years later, the government stated to Mr. Mummery that he could

totally erroneous assertion were somehow correct and The Sweetwater somehow should have been expected to continue maintenance and repair efforts at the lodge without reasonable and safe access, The Sweetwater would be entitled to payment for such efforts. Thus, the government's effort is completely pointless and will simply result in further delay- which obviously is to the benefit of the government given that the government is continuing to hold and receive the benefit of having The Sweetwater's money with no interest obligation to The Sweetwater.

In addition and as the Court has held, the government was obligated by its contract to pay for the lodge based on its April 2001 value with vehicular access, which is the date on which that access was formally prevented and operations under the contract were terminated. The government now insists that, because of that fact, the government is entitled in 2007 to the lodge in its April 2001 condition. This is a patently specious argument which contradicts the explicit determinations of this Court. Had the government paid for the lodge in 2001 as The Sweetwater repeatedly asked it to do, the government would have received the lodge facilities in their 2001 condition. Instead, the government, *at its own risk*, did not make payment of the 2001 value until 2007 (we hope), and that payment will be with no interest (which resulted in a $175,000 windfall to the U.S Treasury based on accrued and retained interest). The government cannot insist that The Sweetwater incur the costs of maintaining and repairing the lodge for six years after 2001 when The Sweetwater is only being paid for the 2001 value (and in fact, the Court

---

only cross the government bridges if he agreed to do so at his own peril.) However, notwithstanding the lack of reasonable and safe access, now the government is insisting that The Sweetwater should have been arranging and paying for the regular maintenance of the lodge for the past six years. (Plaintiff's Exhibit 41 showed that no such maintenance was being done as of 2003.)

explicitly held that The Sweetwater was not required to incur these costs).[3] The government's argument is no different than the following situation: a party unilaterally "takes" another party's home in 2001, and then the taking party states that it will pay the 2001 value of the home in six years, but that the homeowner must maintain the house at its own expense for the six years. This argument is absurd. However, that is exactly the argument which the government is making now.

The Court's judgment specifically established the amount to be paid to The Sweetwater. The judgment also established that The Sweetwater provide unencumbered title to the property. That is all the judgment required and no appeals were filed. The government is now essentially seeking to reduce the Court's award by forcing The Sweetwater to either incur expenses to maintain or repair the lodge facilities (without any compensation), or reduce its award. *See* Exh. 2 (Letter from Mr. Schwind demanding that The Sweetwater, in order to be paid, either (1) incur the cost of maintaining and repairing the lodge or (2) agree to reduce its award).

The Sweetwater believes the government's conduct is unconscionable and an abuse of the terms of the Court's judgment, and will force The Sweetwater to incur even more costs as well as

[3] As the Court held, the lodge facilities can be sold for $750,000 as of 2005. At the 4% annual increase in their value recognized by the Court, they currently can be sold for $811,000 after the government spends approximately $100,000 to fix the bridges (based on the testimony of the government's own bridge expert). Thus, the government gets an $811,000 value for a cost of $637,010, **gaining approximately $174,000** in capital appreciation at The Sweetwater's loss **plus an additional gain of $175,000** based on the interest rate set out by the federal government related to the Renegotiation Act because the government retained this amount in its own account. Admittedly, to realize these gains, the government must repair the bridges for approximately $100,000. However, the government retains the value of those bridges in its capital account (as would the permittee, if it fixed the bridges). **Thus, the total windfall to the government in this case is $349,000!** Given this fact, the government's present argument that it is somehow getting less than it paid for is incredulous. The government should have been content to receive this ill-gotten gain. However, the government is now pressing for even more, with each day of delay causing more damages to The Sweetwater while at the same time benefiting the government. The government's conduct crosses the line into arrogance and abuse.

lose additional interest due to the delay in receiving payment. The Sweetwater further believes that this motion demonstrates the lengths which The Sweetwater is going in an effort to avoid incurring additional legal fees which will otherwise be incurred should additional briefing be required to resolve this issue.

The Sweetwater appreciates the Court's consideration of this request.

Respectfully submitted,

s/Kevin R. Garden

Kevin R. Garden
THE GARDEN LAW FIRM P.C.
301 N. Pitt Street, Suite 325
Alexandria, VA 22314
(703) 535-5565

Dated: January 21, 2007