IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| THE SWEETWATER, A WILDERNESS LODGE LLC, | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 02-1795C (Senior Judge Merow) |
| THE UNITED STATES, | ) | |
| Defendant. | ) | |

DEFENDANT'S NOTICE

On January 24, 2007, the Court issued an order denying plaintiff's motion for a third status conference. According to plaintiff, the purpose of the requested status conference was to seek clarification as to whether, under the Court's October 6, 2006 opinion, plaintiff could be required to transfer the lodge free of the animal excrement, urine, debris, and other damage that has now accumulated in the lodge buildings as a result of plaintiff's decision to discontinue pest control. In its reply to our opposition asking that the parties be permitted an opportunity to negotiate the dispute, plaintiff requested for a briefing schedule to address the issue.

The Court denied plaintiff's motion, but not before deciding the legal issue in plaintiff's favor and eliminating what it called the "pest residue clause" from the transfer agreement, without any briefing from the United States. In addition, the Court volunteered at the close of its order that "the proceedings with respect to obtaining payment of the October 12, 2006 judgment could, conceivably, have relevance with respect to the [EAJA] claim under 28 U.S.C. § 2412(d)." We, of course, will comply with the Court's order and have deleted the reference to "animal excrement/urine and debris" from the transfer documents. However, we file this notice

in response to the Court's suggestion that the United States' position in refusing to accept the transfer of the lodge could "conceivably" be construed as relevant to the pending EAJA claim and, by implication, not substantially justified under EAJA.

We agree with plaintiff that if The Sweetwater had continued pest control services beyond 2002 (the last year the services were obtained, according to plaintiff's exhibits at trial), the Court would have reimbursed plaintiff for those costs as part of its October 6, 2006 decision. The approximate annual cost of these services for previous years was $500. This did not occur, of course, leading to the current condition where the floors, beds, and other furniture in several of the lodge buildings are marked by rat excrement and urine, bedding, carpeting, and other cloth materials are chewed beyond repair, and one building contains a partially decomposed rodent carcass in a live animal trap left by plaintiff's principal Jeffrey Mummery. The Court characterized all of this damage as mere "pest residue." The Forest Service estimate cost of cleaning and repair is upwards of $20,000; we were in the process of securing an independent estimate at the time of the Court's January 24 order. To insure that the documented rodent damage is in the record going forward, we attach the photographs provided to the Court at the second post-trial status conference. See Ex. 1.

Responsibility for this additional, uncontemplated cost was not at all clear, and the position of the United States in refusing to accept the lodge building in its current uninhabitable condition was substantially justified. What is clear is that only plaintiff owned (and still owns) the lodge buildings, only plaintiff knew that it had voluntarily terminated pest control services, only plaintiff had keys to the lodge buildings, and no party presented evidence of the rodent infestation and damage at trial. Moreover, plaintiff's valuation expert stated in a letter to plaintiff's counsel that his appraisal assumed that while the rodent damage would not change the

appraised value of the lodge, he appraised "the lodge facilities as if they had been maintained to a degree which would have been possible with vehicular access." See Ex. 2. We know from plaintiff's evidence presented at trial that pest control services were continued through 2002, over 18 months after the Forest Service closed the bridges to the general public. See, e.g., PX 42. We also know that Mr. Mummery continues to use the bridges for his own personal vehicular access notwithstanding the fact that they remain closed to the public. Thus, we know that Forest Service actions played no part in plaintiff's decision to terminate pest control services.

While the Court held in its October 6, 2006 opinion that the United States constructively terminated The Sweetwater's term permit in April 2001, no one was aware of this termination until it was finally determined by the Court over five years after the fact. Under these circumstances, plaintiff was surely in the best position to assess the condition of the lodge buildings and take reasonable steps to protect them from damage, or at least to warn the Forest Service that he was terminating pest control so that the Forest Service could take those same reasonable steps. Plaintiff failed to do so, leading to the current condition of the lodge buildings.

Nonetheless, the Court's order has placed the full costs of cleaning and repair on United States taxpayers, regardless of the eventual magnitude of that cost. This was done without any briefing from the United States, and on a legal basis never offered by plaintiff. Instead, the Court imposed the costs on the United States by analogizing to "takings" law, and concluded that the compensation to be awarded to plaintiff "was set as of April 3, 2001," the date of the constructive termination and the date of what the Court found in its earlier opinion would have been a taking in the absence of the term permit spelling out the rights and responsibilities of the parties. See Order at 2. Citing a number of "takings" decisions, the Court concluded that "pest

residue or any other circumstance developed subsequent to April 3, 2001, would not affect the value determination awarded, which was set as of April 3, 2001." Id., citing Olson v. United States, 292 U.S. 246, 256 (1934); Yachts America, Inc. v. United States, 8 Cl. Ct. 278, 288, aff'd, 779 F.2d 656 (1985); Jones v. United States, 1 Cl. Ct. 329 (1983); King v. United States, 205 Ct. Cl. 512, 504 F.2d 1138, 1142 (1974). Assuming that the rodent infestation and damage occurred post-April 2001, the Court reasoned that the damage to the lodge cannot decrease the award to plaintiff. Id.

The "takings" argument was never made or briefed by either side to the dispute over responsibility for the rodent damage. If it had, we would have emphasized that the Court's previous holding determined that the facts would support a taking, but that Clause 15 in the term permit – and not "takings" law – formed the basis for awarding compensation. Under the terms of Clause 15, the Court calculated and awarded what it determined to be "equitable consideration," namely the April 2001 value of the lodge and plaintiff's expenses incurred since that date. We would have pointed out that risk allocation rules from contract law and traditional notions of equity – as opposed to "takings" law – would suggest that The Sweetwater bear at least the majority the cost to clean and repair the damage caused by its decision to discontinue extermination services. See Restatement (Second) of Contracts § 154 and cases cited therein (seller is allocated risk of loss where reasonable to do so); §261 cmt. c (circumstances under which "a party might be expected to insure or otherwise secure himself against a risk also militates against shifting it to the other party," particularly if the event causing the loss was not reasonably foreseeable to the other party); Uniform Commercial Code § 2-509 (in the case of a contract for the sale of goods, risk of loss passes from seller to buyer only upon receipt of the goods); see also Yankee Atomic v. United States, 73 Fed. Cl. 249, 260-61, citing Restatement

(Second) Contracts § 350 cmt. b ("Once party has reason to know that performance by the other party will not be forthcoming, he is expected to take such affirmative steps as are appropriate in the circumstances to avoid loss by making substitute arrangements or otherwise.")

We also would have pointed out that under the Court's "takings" analogy and the cases cited in its order, where compensation for a taking is fixed at the time of the taking, The Sweetwater would be barred from obtaining any post-April 2001 damages. Thus, reliance upon the Court's analogy would require a reduction in the total compensation awarded by approximately $170,000. See Olson, 292 U.S. 246, 256 (Compensation is the "market value at the time of the taking contemporaneously paid in money," and does not include the owner's investment in the property: "It is the property and not the cost of it that is safeguarded by state and Federal Constitutions."); Yachts America, Inc., 8 Cl. Ct. 278, 288 (rejecting plaintiffs' claim for the value of improvements made after the taking: "once a taking has occurred, the elements of compensation are set. Improvements made thereafter are not compensable.); Jones, 1 Cl. Ct. 329 (land owner not entitled to compensation for permanent improvements made on his property after the date of the taking, even where he is unaware that the taking has occurred); King, 205 Ct. Cl. 512, 504 F.2d 1138, 1142 ("Compensation for a taking must be determined as of the time and place of taking"; plaintiff not entitled to damages arising between the taking and the formal vesting of title in the United States.) The rule from the line of cases cited by the Court may explain why plaintiff never relied upon "takings" law in any of its arguments against accepting responsibility for the rodent damage.

For all of these reasons, the position of the United States with respect to payment of the judgment in this case was substantially justified.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

s/ Kathryn A. Bleecker
KATHRYN A. BLEECKER
Assistant Director

OF COUNSEL:

KENNETH S. CAPPS
Office of General Counsel
U.S. Department of Agriculture
740 Simms Street, Room 309
Golden, CO 80401-4720

s/ Gregg M. Schwind
GREGG M. SCHWIND
Trial Attorney
Commercial Litigation Branch
Civil Division
U.S. Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington D.C. 20530
Tel: (202) 353-2345
Fax: (202) 514-8624

Attorneys for Defendant

January 25, 2007