IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| THE SWEETWATER, A WILDERNESS LODGE LLC,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | No. 02-1795C<br>(Senior Judge Merow) |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S "NOTICE"**

Pursuant to this Court's Order dated January 31, 2007, plaintiff The Sweetwater, A Wilderness Lodge LLC ("The Sweetwater") hereby submits its response to defendant's "Notice" which was filed with the Court on January 25, 2007. Pursuant to this response, The Sweetwater is also supplementing its EAJA application for costs incurred since its revised application was submitted.

In its "Notice," the government addresses the issue of whether it was substantially justified in insisting that, in order for The Sweetwater to receive payment pursuant to the Court's final judgment, The Sweetwater had to agree to incur the costs of cleaning up the lodge. Notice at 2. The government now presents several new legal arguments which it alleges support its position that it was substantially justified in taking this position. Rather than demonstrate that the government was substantially justified, these argument conclusively show the unreasonableness of the government's position.

First, the government's arguments directly contradict the final decision of the Court in this matter and thereby constitute an untimely challenge to that decision. Second, the

government could have, but failed to, raise the arguments it is now presenting in the hearing below, in a reconsideration motion or in any appeal. Thus, the government has waived these arguments. Third, the theories now being presented by the government do not establish that The Sweetwater had any contractual or equitable obligation to maintain the lodge facilities since April 2001 because the government itself physically blocked vehicular access to the lodge for a significant period between 2001-2006. The government also failed to construct fords across Sweetwater Creek or repair the bridges so that the lodge facilities could be accessed without jeopardizing the health and safety of any representatives from The Sweetwater. Thus, even if The Sweetwater somehow had an obligation to maintain the lodge facilities, the government precluded The Sweetwater from doing so. In addition, the government failed to mitigate The Sweetwater's damages because the government failed to pay The Sweetwater its equitable consideration in a timely manner.

**1. The government's argument that The Sweetwater had an obligation to maintain the lodge facilities at any point between April 2001 and the present directly contradicts the Court's opinion in this matter.**

The government is now asserting that "[r]esponsibility for this additional, uncontemplated cost [associated with cleaning up the lodge due to the alleged lack of maintenance] was not at all clear. . . ." Notice at 2 ("This [maintenance] did not occur, of course, leading to the current condition [of the lodge facilities])." The government then raises several arguments based on the Restatement (Second) of Contracts, Uniform Commercial Code and case law to support its argument that The Sweetwater had a legal obligation to maintain the lodge since 2001. Notice at 4-5. However, the Court explicitly held in its Opinion:

> The determination that The Sweetwater permit was terminated upon the closure of the bridges and their effective elimination by the Forest [in 2001] produces the logical conclusion that The Sweetwater, thereafter, was no longer responsible for

> maintenance and upkeep on the improvements which cannot be removed and for which the Forest Service must pay equitable consideration.

Opinion at 33. Therefore, if The Sweetwater had no responsibility to maintain the lodge facilities, it is equally clear that The Sweetwater would not be liable for any costs caused by any lack of maintenance. The government's argument is thus directly contrary to the Court's determination in its Opinion.[1] Notably, the government did not seek reconsideration of that Opinion nor did it appeal it. As a result, the government's argument is an untimely challenge to the Court's Opinion in this matter.

**2. Because the government could have, but failed to, raise the arguments it now presents during the trial or at any time prior to this Court's judgment becoming final, the government has waived any such arguments.**

The government is now arguing that, under principles of contract law, The Sweetwater had a duty to "mitigate" any damages *to the government* after the government's termination of the permit and thus, pursuant to this duty to "mitigate" the government's damages, The Sweetwater therefore had a duty to maintain the lodge facilities. Notice at 4.[2] Obviously, the government's argument is simply another way to assert that The Sweetwater had an obligation to maintain the lodge facilities since 2001. The Court has already found that no such obligation existed. Moreover, at no point in this proceeding did the government raise its current argument that The Sweetwater had any obligation to maintain the lodge facilities since 2001 or that The

---

[1] The government even acknowledges in its Notice that The Sweetwater would be entitled to compensation for the costs of any maintenance it completed after April 2001. Notice at 2. This acknowledgement makes the government's current argument all the more unreasonable.

[2] As noted in the following section, the government is essentially asserting that The Sweetwater's actions increased *the government's* damages in this case. The government has not shown that The Sweetwater failed to mitigate *The Sweetwater's* damages. However, as noted, the government never raised this argument previously when the value of the lodge was being determined.

Sweetwater failed to meet any obligation to mitigate either its own damages or the government's damages. Because the government was fully aware that The Sweetwater had not been maintaining the lodge facilities since, at the very latest, 2002, the government clearly was on notice of this fact.[3] Therefore, in addition to contradicting the Court's explicit and final determination on this issue, the government's argument that The Sweetwater had a duty to maintain the lodge or mitigate damages pursuant to such maintenance has been waived because it was not raised in a timely manner. *See Lamle v. Mattel, Inc.*, 394 F.3d 1355, 1359 n. 1 (Fed.Cir.2005); *Abbott Labs. v. Syntron Bioresearch, Inc.*, 334 F.3d 1343, 1355 (Fed.Cir.2003); *Corrigan v. United States*, 70 Fed. Cl. 665, 667-68 (2006).

The government was well aware that The Sweetwater had not been maintaining the lodge facilities since 2002. In fact, the government conducted a thorough inspection of the facilities in 2005 along with its appraiser. Notwithstanding its knowledge of The Sweetwater's conduct and the condition of the lodge as of May 2005, the government never raised any assertion that The Sweetwater had a duty to maintain or otherwise mitigate the government's damages through maintenance of the lodge facilities.[4] In addition, the government has provided no evidence

---

[3]As stated in its Notice, the government "kn[e]w from plaintiff's evidence presented at trial that pest control services were continued through 2002. . . . " Notice at 3; *see* PX 42 (showing that The Sweetwater had terminated any maintenance and pest control efforts as of the end of 2002).

[4] As the government admits, "no party presented evidence of the rodent infestation and damage at trial." Notice at 2. The Sweetwater did not present any such evidence because The Sweetwater recognized that it did not have a continuing maintenance obligation given that the government had conducted a forced sale of the lodge. The government's failure to present any such evidence related to any alleged damage to the lodge facilities since 2001 is simply confirmation that the government did not believe that The Sweetwater had any maintenance obligation since 2001. The government's change of counsel in this case appears to have resulted in its change of position. However, the government's new counsel was assigned to this case before the Court's Opinion and judgment were issued, and counsel never sought any

whatsoever that any of the alleged "damage" has been incurred since the lodge facilities were appraised for this matter in 2005.[5] Nor has the government made any effort to quantify the alleged "damage" which occurred since that date due to this alleged lack of maintenance. Moreover, the government cannot reasonably claim that it was unaware of the type of wear and tear, including any pest issues, which occurs to structures in remote parts of the Shoshone National Forest when no active operations are ongoing.

As both parties recognized during the litigation of this case, the issue was the condition of the lodge facilities as of the date of termination of the permit. The Sweetwater's appraiser proceeded with his valuation of the lodge in 2005 based on his assessment of the lodge facilities as if they had vehicular access and had been maintained if such access had been available. The government never challenged this aspect of the approach by The Sweetwater's appraiser. Nor did the government ever assert that the condition of the lodge facilities since 2001, or even since 2005, was relevant to the Court's decision in this matter. In fact, the government's own appraiser, who also inspected the lodge facilities in 2005 (more than two years after pest control and maintenance efforts had ceased), could have, but did not make any mention of the current condition of the lodge facilities in any way impacting his valuation either. Thus, the government's post-trial, post-final judgment allegations could have been, but were never raised by it or any of the appraisal experts in this case.

---

reconsideration or appeal of the Court's Opinion or judgment. More importantly, changing counsel in a case does not excuse a party's prior waiver of an issue.

[5]The photographs set forth at Exhibit 1 to the Notice have no evidentiary weight because the government has not established the date on which any of the pest residue in those photographs occurred. Moreover, Mr. Mangus visited the lodge facilities after the government's photographs were taken and stated that the lodge condition as to its cleanliness was similar in January 2007 to its condition in May 2005. Exh. 2 attached to Notice. Mr. Mangus further stated that the condition of the lodge facilities as of January 2007 would not change his views as to the value of the lodge. *Id.*

**3. Even if the government's argument did not contradict the Court's Opinion and has not been waived, it is simply wrong as a matter of law.**

In addition to being a direct and untimely challenge to the Court's Opinion in this case, the government's legal arguments that The Sweetwater had an equitable or legal obligation to continue maintaining the lodge facilities after 2001 are wrong. The government asserts that "risk allocation rules from contract law and traditional notions of equity [] would suggest that The Sweetwater bear at least the majority [of] the cost to clean and repair the damage caused by its decision to discontinue extermination services." Notice at 4. The government then proceeds to cites various principles from the Restatement (Second) of Contracts, the Uniform Commercial Code and this Court's case law. *Id*. at 4-5. However, as shown below, most of these citations do not even apply to the circumstances at issue, and some of these citations directly contradict the government's position. Thus, these citations not only do not "suggest" that The Sweetwater bear any of the costs associated with any lack of maintenance, they provide absolutely no reasonable basis for the government's new arguments.

First, the government represents that Restatement (Second) of Contracts § 154 states that a seller is allocated a risk of loss "where reasonable to do so." Notice at 4. However, Restatement (Second) of Contract § 154 refers to "[w]hen a party bears the risk of a mistake." Moreover, the mistake "must relate to the facts as they exist at the time of the making of the contract." *See* Restatement (Second) of Contracts § 151. Because the government has not shown a mistake of fact which existed at the time of the making of the contract, this section of the Restatement (Second) is simply inapplicable.

Nor is there is any "loss" in this case to the value of the lodge facilities. As The Sweetwater's appraiser, Mr. Mangus, clearly stated, the current condition of the lodge facilities would not change his assessment of that value of the lodge facilities. Notice at Exh. 2. Also, the

government is the party which prevented any reasonable access to the lodge facilities by The Sweetwater from 2001 to the present. This included the government placing padlocked gates across the bridges, failing to provide The Sweetwater with a key to unlock those gates for substantial periods of time, failing to repair the bridges to allow for safe access, requiring The Sweetwater to sign a waiver so that the government would not be liable if any representatives of The Sweetwater were injured or killed in trying to access the lodge facilities, and failing to install a ford to allow for crossing the Sweetwater Creek. Given these facts, the government cannot reasonable assert that, after the government's forced sale, The Sweetwater should have been risking the health and safety of its representatives to maintain a facility which the government shut down in 2001.

The government also cites to Restatement (Second) of Contract § 261, which applies to "discharge by supervening impracticability." Notice at 4. That section stands for the principle that, if a party's performance of a contract is made impractical "without his fault" by the occurrence of an event not anticipated by the parties, "his duty to render that performance is discharged." Restatement (Second) of Contracts § 261. Thus, the government's condemning and physically blocking the gates clearly discharged any alleged duty or obligation that The Sweetwater would have had to maintain the lodge facilities. This outcome is directly consistent with the Court's determination that The Sweetwater had no such obligation. Opinion at 33. Therefore, this section of the Restatement (Second) directly contradicts the government's argument that The Sweetwater somehow had such an obligation to continue maintaining the lodge facilities after 2001.

The government also cites to the Uniform Commercial Code at § 2-509. Notice at 4. This provision states the general proposition that the risk of loss shifts when physical possession

of goods is transferred from the seller to the buyer. *Id.* However, the UCC applies to goods, not improvements located on real property. The government's effort to assert that the government somehow did not assume any risk of loss to the lodge facilities until the government actually took control over those facilities is incorrect. In 2001, The Sweetwater repeatedly urged the government to comply with Section 15 of the contract by compensating The Sweetwater for the lodge facilities because the government had in fact terminated lodge operations. JX 16, 18, 20. The government refused. For the government to now assert that The Sweetwater should bear the risk of loss to the facilities (even though no loss has been established) simply makes no sense in these circumstances where the government had an obligation to compensate The Sweetwater for the facilities and take possession of them in 2001, but simply refused to do so. If anything, the government assumed the risks by failing to comply with it contractual obligation as of 2001.

The government also cites to *Yankee Atomic v. United States*, 73 Fed. Cl. 249, 260-61 (2006) as supporting its position. However, the decision in *Yankee Atomic* only further supports The Sweetwater's position. *Yankee Atomic* stands for the proposition that, if a party has reason to know that performance by the other party will not occur, the party should reduce its *own* losses. In this case, after the government failed to perform its part of the contract, The Sweetwater stopped incurring further maintenance and pest control costs as of 2002. As the Court found, these costs were the equivalent of The Sweetwater's losses because the government had to compensate The Sweetwater for them. Therefore, by ceasing to incur these costs, The Sweetwater reduced its own losses. *Yankee Atomic* and Restatement (Second) of Contracts § 350 focus on a party's obligation to take all reasonable efforts to minimize its *own losses*. The government's effort to twist these authorities around to place an obligation on a party to incur costs which would avoid losses to the other party is simply incorrect. Even if these authorities

could somehow be twisted in this manner, Restatement (Second) of Contracts § 350 explicitly states that a party's efforts are limited to efforts which can be taken "without undue risk." The government cannot reasonably assert that The Sweetwater had an obligation to risk the health and safety of its own representatives in order to maintain the lodge facilities for the benefit of the government, especially where the government is the party which made any such maintenance unreasonable.

The government also states that "notions of equity" support its arguments. Notice at 4. This assertion is completely incorrect. The government claims that it would be inequitable to require the government to incur the cost of cleaning and repairing the lodge due to the fact that the government terminated the operations in 2001 but did not compensate The Sweetwater until 2007. However, the government completely ignores the huge inequity of the government avoiding paying any interest to The Sweetwater for the lodge value from April 2001 to sometime in 2007. Thus, if principles of equity are to be considered, as the government asserts, The Sweetwater should be entitled to this interest amount which totals $175,000 under the government's own applicable interest rates. The government also received an instantaneous capital appreciation by being able to purchase the lodge facilities in 2007 for their 2001 value. The government has never addressed this inequity and windfall which it achieved by delaying its compliance with the terms of the contract at issue. While the government focuses on what it believes was a disadvantage to itself due to this matter not being resolved until 2007, the government ignores the huge windfall which it received due to that same passage of time.

Finally, the government challenges the Court's decision to compensate The Sweetwater for the out of pocket costs which it incurred after 2001 related to the lodge facilities. Notice at 5. The government claims that the Court cannot analogize the current situation to a takings case

without reducing The Sweetwater's compensation for these costs incurred after 2001. This challenge is clearly an untimely challenge to the Court's decision in this case. Moreover, The Sweetwater did not incur any post-taking interest either. Therefore, it is obvious that the Court's references to takings cases was simply an analogy given that section 15 served a similar purpose as a takings clause. It is also obvious that the Court did not proceed under the principles of law otherwise applicable to a taking in its determination in this case, which the government did not appeal.

**4. The government cannot require Mr. Mummery to sign a waiver before he crosses the bridges, and then insist that Mr. Mummery has an obligation under the contract to cross the bridges in order to benefit the government.**

In addition to being untimely, waived and legally incorrect, the government's present argument that Mr. Mummery had an obligation to cross the bridges at issue to maintain the lodge facilities for the benefit of the government is truly outrageous. The government refers to the fact that Mr. Mummery traveled to the lodge several times over the six year period 2001-2007 as evidence to support its assertion. Notice at 3. What the government fails to point out is that the government had explicitly required Mr. Mummery to execute a waiver in order to be allowed to cross the dangerous and condemned bridges. Therefore, if Mr. Mummery were injured when crossing the bridges, the government had no liability to him for any harm he incurred. For the government to now claim that Mr. Mummery was legally obligated under the contract at issue to cross those condemned bridges to benefit the government with the government simultaneously having required him to waive any government liability if he were injured doing so, is truly incredible.

**5. The Sweetwater is entitled to its attorneys fees and costs related to the government's refusal to accept transfer of the lodge facilities.**

For the reasons set forth above and in its previous filings, The Sweetwater is entitled to its attorneys fees and costs related to its efforts to obtain payment in this matter. Pursuant to its statements in its prior submissions, The Sweetwater respectfully supplements the previously submitted Plaintiff's Revised Application for Attorneys' Fees and Costs Pursuant to the Equal Access to Justice Act, which was filed with the Court on December 12, 2006. The purpose of The Sweetwater's supplementation of its application is to include attorneys fees and costs associated with proceeding with the above-captioned matter since the filing of that application. This motion consists of supplementing The Sweetwater's attorneys' fees and costs by the amount of $ 7,484.32. The documentation supporting those costs are attached hereto as Exhibits Z, AA and BB.[6]

Pursuant to this supplementation, the total amount being sought by The Sweetwater pursuant to the Equal Access to Justice Act is $ 366,473.58.

**6. Conclusion**

For the reasons set forth above and in its previous submissions, The Sweetwater respectfully requests that the Court grant The Sweetwater's application for reimbursement of attorneys fees and costs under the EAJA.

Respectfully submitted,

s/Kevin R. Garden

Kevin R. Garden
THE GARDEN LAW FIRM P.C.

---

[6] Because the government still has not yet agreed to a document which transfers The Sweetwater's ownership in the property at issue in this matter, The Sweetwater respectfully reserves the right to supplement this application should that become necessary or should The Sweetwater incur additional costs in pursuing its EAJA application.

211 North Union Street, Suite 100
Alexandria, VA 22314
(703) 519-1286

Dated: February 6, 2007

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| THE SWEETWATER, A WILDERNESS LODGE LLC,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES OF AMERICA,<br><br>Defendant. | ) | No. 02-1795C<br>(Judge Merow) |

**<u>SECOND DECLARATION OF JEFFREY C. MUMMERY</u>**

I, Jeffrey C. Mummery, declare as follows:

1. Unless otherwise stated, I have personal knowledge of the following facts which I believe to be true to the best of my present knowledge and understanding.

2. At all times relevant to the issues in this dispute, I have been the Manager of plaintiff The Sweetwater, A Wilderness Lodge LLC and have acted as its representative.

3. I have reviewed all the exhibits attached to The Sweetwater's revised application for attorneys fees, as supplemented, under the Equal Access to Justice Act and all statements set forth therein are accurate to the best of my knowledge. All fees and expenses set forth in The Sweetwater's counsel's bills and itemizations of time at Exhibits X, AA and BB as well as the other exhibits setting forth attorneys' fees have been incurred in this matter.



Exhibit Z

4. With the exception of Mr. Housel, the rates of the attorneys who worked on behalf of The Sweetwater in this matter were in excess of $152.38/hour.

I declare under penalty of perjury that the foregoing is true and correct.

Jeffrey C. Mummery

Executed on February 5, 2007

**Attorneys' Fees Incurred In The Period January 8, 2007-February 5, 2007**

| Date | Description of effort | Time | | Value capped at EAJA rate of $152.38 |
|---|---|---|---|---|
| 1/9/2007 | T/C w/ J. Mummery re: status conference with Court and related issues | 0.6 | $ | 91.43 |
| 1/11/2007 | Review letter from G. Schwind; prepare outline for conference with Court and DOJ | 0.3 | $ | 45.71 |
| 1/13/2007 | T/C w/ J. Mummery re: government letter re: terms of sale | 0.4 | $ | 60.95 |
| 1/15/2007 | T/C w/ J. Mummery re: government letter discussing terms of sale document; edit outline for status conference | 2.3 | $ | 350.47 |
| 1/16/2007 | T/C w/ J. Mummery re: visit to lodge facilities w/ Q. Mangus; draft proposal comments for Q. Mangus | 1.9 | $ | 289.52 |
| 1/17/2007 | T/C w/ J. Mummery re: issues to be addressed in status conference; T/C w/ J. Mummery re: Q. Mangus visit to lodge facilities | 0.9 | $ | 137.14 |
| 1/18/2007 | T/C w/ J. Mummery re: status; prepare for status conference in J. Merow's chambers; review correspondence with DOJ re: Buy Sell Agreement terms; attend status conference; T/C w/ J. Mummery re: same; revise agreement and send to G. Schwind | 5.4 | $ | 822.85 |
| 1/19/2007 | T/C w/ J. Mummery re: remaining conditions for sale agreement; T/C w/ G. Schwind; review letter from G. Schwind; T/C w/ J. Mummery re: same | 3.2 | $ | 487.62 |
| 1/20/2007 | T/C w/ J. Mummery; draft motion for status conference | 0.7 | $ | 106.67 |
| 1/21/2007 | T/C w/ J. Mummery re: status conference; revise motion for status conference | 3.9 | $ | 594.28 |
| 1/22/2007 | Review government response to status conference; T/C w/ J. Mummery re: draft reply | 4.3 | $ | 655.23 |

**EXHIBIT AA**

| | | | | |
|---|---|---|---|---|
| 1/23/2007 | T/C w/ J. Mummery re: access to lodge; T/C w/ J. Mummery re: Forest Service request to have carpet cleaner access lodge to prepare estimate | 2.1 | $ | 320.00 |
| 1/24/2007 | T/C w/ J. Mummery re: providing government access to lodge related to maintenance issues; draft letter to G. Schwind re: same; review court's order clarifying judgment; T/C w/ J. Mummery re: same; review government proposed agreement | 2.3 | $ | 350.47 |
| 1/25/2007 | T/C w/ J. Mummery re: language in agreement and concern over continuing obligations beyond transfer of property | 1 | $ | 152.38 |
| 1/29/2007 | T/C w/ J. Mummery re: modification to agreement | 0.2 | $ | 30.48 |
| 1/30/2007 | T/C w/ J. Mummery re: revisions to sale agreements; revise same; T/C w/ J. Mummery re: same; draft email to G. Schwind re: unacceptable agreement language | 3.7 | $ | 563.81 |
| 1/31/2007 | T/C w/ J. Mummery re: supplementing EAJA; draft motion to supplement' review Court Order | 2.9 | $ | 441.90 |
| 2/1/2007 | T/C w/ J. Mummery re: filing motion for clarification | 1.3 | $ | 198.09 |
| 2/2/2007 | Draft email to G. Schwind; begin drafting response to Notice | 1.7 | $ | 259.05 |
| 2/5/2007 | T/C w/ J. Mummery re: response to Notice; continue drafting response | 4.7 | $ | 716.19 |
| | | 43.8 | **$** | **6,674.24** |

**EXHIBIT AA**

SALTMAN & STEVENS, P.C.
1801 K Street N.W., Suite M-110, Washington, D.C. 20006
(202) 452-2140
Fax (202) 775-8217

January 04, 2007

The Sweetwater, A Wilderness Lodge
P.O. Box 150
Wapiti WY 82450
Contact: Jeff Mummery

Invoice # 20136

In Reference To: Sweetwater/Permit Claim
Owner/operator of lodge and facilities on Shoshone NF operated pursuant to a special use permit

| | | Amount |
|---|---|---|
| | Interest on overdue balance | $810.08 |
| | Total amount of this bill | $810.08 |
| | Previous balance | $78,610.53 |
| 12/7/2006 | Payment - thank you. Check No. 2038 | ($749.43) |
| | Total payments and adjustments | ($749.43) |
| | Balance due | $78,671.18 |

New Charges

EXHIBIT BB

SALTMAN & STEVENS, P.C.
1801 K Street N.W., Suite M-110, Washington, D.C. 20006
(202) 452-2140
Fax (202) 775-8217

February 01, 2007

The Sweetwater, A Wilderness Lodge
P.O. Box 150
Wapiti WY 82450
Contact: Jeff Mummery

Invoice # 20189

In Reference To: Sweetwater/Permit Claim
Owner/operator of lodge and facilities on Shoshone NF operated pursuant to a special use permit

| | | Amount |
|---|---|---|
| | Interest on overdue balance | $782.66 |
| | Total amount of this bill | $782.66 |
| | Previous balance | $78,671.18 |
| 1/22/2007 | Payment - thank you. Check No. 2039 | ($1,671.18) |
| | Total payments and adjustments | ($1,671.18) |
| | Balance due | $77,782.66 |

new bill Feb 1, 2007

EXHIBIT BB